# ALABAMA *v.* SHELTON

No. 00–1214.   Argued February 19, 2002—Decided May 20, 2002

*Bill Pryor*, Attorney General of Alabama, argued the cause for petitioner. With him on the briefs were *Sandra Jean Stewart* and *Stephanie N. Morman*, Assistant Attorneys General.

*Charles Fried*, by invitation of the Court, 534 U. S. 987 (2001), argued the cause and filed a brief as *amicus curiae* in opposition to the judgment below.

*William H. Mills* argued the cause and filed a brief for respondent.

*Steven Duke* argued the cause for the National Association of Criminal Defense Lawyers as *amicus curiae* urging affirmance. With him on the brief were *Thomas F. Liotti* and *David M. Porter.**

JUSTICE GINSBURG delivered the opinion of the Court.

This case concerns the Sixth Amendment right of an indigent defendant charged with a misdemeanor punishable by imprisonment, fine, or both, to the assistance of court-appointed counsel. Two prior decisions control the Court's judgment. First, in *Argersinger* v. *Hamlin*, 407 U. S. 25 (1972), this Court held that defense counsel must be appointed in any criminal prosecution, "whether classified as petty, misdemeanor, or felony," *id.*, at 37, "that actually leads to imprisonment even for a brief period," *id.*, at 33. Later, in *Scott* v. *Illinois*, 440 U. S. 367, 373–374 (1979), the Court drew the line at "actual imprisonment," holding that counsel need not be appointed when the defendant is fined for the charged crime, but is not sentenced to a term of imprisonment.

---

*A brief of *amici curiae* urging reversal was filed for the State of Texas et al. by *John Cornyn*, Attorney General of Texas, *Gregory S. Coleman*, Solicitor General, *S. Kyle Duncan*, Assistant Solicitor General, *Carter G. Phillips*, *Gene C. Schaerr*, *Paul J. Zidlicky*, and *Rebecca K. Smith*, and by the Attorneys General for their respective States as follows: *M. Jane Brady* of Delaware, *Richard P. Ieyoub* of Louisiana, *Mike McGrath* of Montana, *Don Stenberg* of Nebraska, *Betty D. Montgomery* of Ohio, and *Randolph A. Beales* of Virginia.

Defendant-respondent LeReed Shelton, convicted of third-degree assault, was sentenced to a jail term of 30 days, which the trial court immediately suspended, placing Shelton on probation for two years. The question presented is whether the Sixth Amendment right to appointed counsel, as delineated in *Argersinger* and *Scott*, applies to a defendant in Shelton's situation. We hold that a suspended sentence that may "end up in the actual deprivation of a person's liberty" may not be imposed unless the defendant was accorded "the guiding hand of counsel" in the prosecution for the crime charged. *Argersinger*, 407 U. S., at 40 (internal quotation marks omitted).

## I

After representing himself at a bench trial in the District Court of Etowah County, Alabama, Shelton was convicted of third-degree assault, a class A misdemeanor carrying a maximum punishment of one year imprisonment and a $2,000 fine, Ala. Code §§ 13A–6–22, 13A–5–7(a)(1), 13A–5–12(a)(1) (1994). He invoked his right to a new trial before a jury in Circuit Court, Ala. Code § 12–12–71 (1995), where he again appeared without a lawyer and was again convicted. The court repeatedly warned Shelton about the problems self-representation entailed, see App. 9, but at no time offered him assistance of counsel at state expense.

The Circuit Court sentenced Shelton to serve 30 days in the county prison. As authorized by Alabama law, however, Ala. Code § 15–22–50 (1995), the court suspended that sentence and placed Shelton on two years' unsupervised probation, conditioned on his payment of court costs, a $500 fine, reparations of $25, and restitution in the amount of $516.69.

Shelton appealed his conviction and sentence on Sixth Amendment grounds, and the Alabama Court of Criminal

Appeals affirmed.[1] That court initially held that an indigent defendant who receives a suspended prison sentence has a constitutional right to state-appointed counsel and remanded for a determination whether Shelton had "made a knowing, intelligent, and voluntary waiver of his right." App. 7. When the case returned from remand, however, the appeals court reversed course: A suspended sentence, the court concluded, does not trigger the Sixth Amendment right to appointed counsel unless there is "evidence in the record that the [defendant] has actually been deprived of liberty." *Id.*, at 13. Because Shelton remained on probation, the court held that he had not been denied any Sixth Amendment right at trial. *Id.*, at 14.

The Supreme Court of Alabama reversed the Court of Criminal Appeals in relevant part. Referring to this Court's decisions in *Argersinger* and *Scott*, the Alabama Supreme Court reasoned that a defendant may not be "sentenced to a term of imprisonment" absent provision of counsel. App. 37. In the Alabama high court's view, a suspended sentence constitutes a "term of imprisonment" within the meaning of *Argersinger* and *Scott* even though incarceration is not immediate or inevitable. And because the State is constitutionally barred from activating the conditional sentence, the Alabama court concluded, "'the threat itself is hollow and should be considered a nullity.'" App. 37 (quoting *United States* v. *Reilley*, 948 F. 2d 648, 654 (CA10 1991)). Accordingly, the court affirmed Shelton's conviction and the monetary portion of his punishment, but invalidated "that aspect of his sentence imposing 30 days of

---

[1] Shelton also appealed on a number of state-law grounds. The Court of Criminal Appeals rejected all but one of those challenges, concluding that most had been procedurally defaulted in the trial court. See App. 14–25. On one such challenge, the court remanded for further proceedings, *id.*, at 23, but affirmed after the trial court ruled against Shelton on remand, *id.*, at 29.

suspended jail time." App. 40. By reversing Shelton's suspended sentence, the State informs us, the court also vacated the two-year term of probation. See Brief for Petitioner 6.[2]

Courts have divided on the Sixth Amendment question presented in this case. Some have agreed with the decision below that appointment of counsel is a constitutional prerequisite to imposition of a conditional or suspended prison sentence. See, *e. g., Reilley,* 948 F. 2d, at 654; *United* States v. *Foster,* 904 F. 2d 20, 21 (CA9 1990); *United States* v. *White,* 529 F. 2d 1390, 1394 (CA8 1976). Others have rejected that proposition. See, *e. g., Cottle* v. *Wainwright,* 477 F. 2d 269, 274 (CA5), vacated on other grounds, 414 U. S. 895 (1973); *Griswold* v. *Commonwealth,* 252 Va. 113, 116–117, 472 S. E. 2d 789, 791 (1996); *State* v. *Hansen,* 273 Mont. 321, 325, 903 P. 2d 194, 197 (1995). We granted certiorari to resolve the conflict. 532 U. S. 1018 (2001).

## II

Three positions are before us in this case. In line with the decision of the Supreme Court of Alabama, Shelton argues that an indigent defendant may not receive a suspended sentence unless he is offered or waives the assistance of state-appointed counsel. Brief for Respondent 5–27.[3] Ala-

---

[2] Justice Maddox dissented, stating that Shelton was not constitutionally entitled to counsel because he "received only a suspended sentence and was not incarcerated." App. 41. Justice Maddox also construed the trial record as establishing Shelton's waiver of any right to appointed counsel he might have enjoyed. *Ibid.*

[3] Shelton also urges this Court to overrule *Argersinger* v. *Hamlin,* 407 U. S. 25 (1972), and *Scott* v. *Illinois,* 440 U. S. 367 (1979), to the extent those cases do not guarantee a right to counsel "in all cases where imprisonment is an authorized penalty." Brief for Respondent 27–31. We do not entertain this contention, for Shelton first raised it in his brief on the merits. "We would normally expect notice of an intent to make so far-reaching an argument in the respondent's opposition to a petition for certiorari, cf. this Court's Rule 15.2, thereby assuring adequate preparation time for those likely affected and wishing to participate." *South Central Bell Telephone Co.* v. *Alabama,* 526 U. S. 160, 171 (1999).

bama now concedes that the Sixth Amendment bars *activation* of a suspended sentence for an uncounseled conviction, but maintains that the Constitution does not prohibit *imposition* of such a sentence as a method of effectuating probationary punishment. Reply Brief 4–13. To assure full airing of the question presented, we invited an *amicus curiae (amicus)* to argue in support of a third position, one Alabama has abandoned: Failure to appoint counsel to an indigent defendant "does not bar the imposition of a suspended or probationary sentence upon conviction of a misdemeanor, even though the defendant might be incarcerated in the event probation is revoked." 534 U. S. 987 (2001).[4]

## A

In *Gideon* v. *Wainwright*, 372 U. S. 335, 344–345 (1963), we held that the Sixth Amendment's guarantee of the right to state-appointed counsel, firmly established in federal-court proceedings in *Johnson* v. *Zerbst*, 304 U. S. 458 (1938), applies to state criminal prosecutions through the Fourteenth Amendment. We clarified the scope of that right in *Argersinger*, holding that an indigent defendant must be offered counsel in any misdemeanor case "that actually leads to imprisonment." 407 U. S., at 33. Seven Terms later, *Scott* confirmed *Argersinger*'s "delimit[ation]," 440 U. S., at 373. Although the governing statute in *Scott* authorized a jail sentence of up to one year, see *id.*, at 368, we held that the defendant had no right to state-appointed counsel because the sole sentence actually imposed on him was a $50 fine, *id.*, at 373. "Even were the matter *res nova*," we stated, "the central premise of *Argersinger*—that actual imprisonment is a penalty different in kind from fines or the mere threat of imprisonment—is eminently sound and warrants adoption of actual imprisonment as the line defining the constitutional right to appointment of counsel" in nonfelony cases. *Ibid.*

---

[4] Charles Fried, a member of the Bar of this Court, accepted our invitation and has well fulfilled his assigned responsibility.

Subsequent decisions have reiterated the *Argersinger-Scott* "actual imprisonment" standard. See, *e. g., Glover* v. *United States,* 531 U. S. 198, 203 (2001) ("any amount of actual jail time has Sixth Amendment significance"); *M. L. B.* v. *S. L. J.,* 519 U. S. 102, 113 (1996); *Nichols* v. *United States,* 511 U. S. 738, 746 (1994) (constitutional line is "between criminal proceedings that resulted in imprisonment, and those that did not"); *id.,* at 750 (SOUTER, J., concurring in judgment) ("The Court in *Scott,* relying on *Argersinger*[,] drew a bright line between imprisonment and lesser criminal penalties."); *Lassiter* v. *Department of Social Servs. of Durham Cty.,* 452 U. S. 18, 26 (1981). It is thus the controlling rule that "absent a knowing and intelligent waiver, no person may be imprisoned for any offense . . . unless he was represented by counsel at his trial." *Argersinger,* 407 U. S., at 37.

## B

Applying the "actual imprisonment" rule to the case before us, we take up first the question we asked *amicus* to address: Where the State provides no counsel to an indigent defendant, does the Sixth Amendment permit activation of a suspended sentence upon the defendant's violation of the terms of probation? We conclude that it does not. A suspended sentence is a prison term imposed for the offense of conviction. Once the prison term is triggered, the defendant is incarcerated not for the probation violation, but for the underlying offense. The uncounseled conviction at that point "result[s] in imprisonment," *Nichols,* 511 U. S., at 746; it "end[s] up in the actual deprivation of a person's liberty," *Argersinger,* 407 U. S., at 40. This is precisely what the Sixth Amendment, as interpreted in *Argersinger* and *Scott,* does not allow.

*Amicus* resists this reasoning primarily on two grounds. First, he attempts to align this case with our decisions in *Nichols* and *Gagnon* v. *Scarpelli,* 411 U. S. 778 (1973). See Brief for *Amicus Curiae* by Invitation of the Court 11–18

(hereinafter Fried Brief). We conclude that Shelton's case is not properly bracketed with those dispositions.

*Nichols* presented the question whether the Sixth Amendment barred consideration of a defendant's prior uncounseled misdemeanor conviction in determining his sentence for a subsequent felony offense. 511 U. S., at 740. Nichols pleaded guilty to federal felony drug charges. Several years earlier, unrepresented by counsel, he was fined but not incarcerated for the state misdemeanor of driving under the influence (DUI). Including the DUI conviction in the federal Sentencing Guidelines calculation allowed the trial court to impose a sentence for the felony drug conviction "25 months longer than if the misdemeanor conviction had not been considered." *Id.*, at 741. We upheld this result, concluding that "an uncounseled misdemeanor conviction, valid under *Scott* because no prison term was imposed, is also valid when used to enhance punishment at a subsequent conviction." *Id.*, at 749. In *Gagnon*, the question was whether the defendant, who was placed on probation pursuant to a suspended sentence for armed robbery, had a due process right to representation by appointed counsel at a probation revocation hearing. 411 U. S., at 783. We held that counsel was not invariably required in parole or probation revocation proceedings; we directed, instead, a "case-by-case approach" turning on the character of the issues involved. *Id.*, at 788–791.

Considered together, *amicus* contends, *Nichols* and *Gagnon* establish this principle: Sequential proceedings must be analyzed separately for Sixth Amendment purposes, Fried Brief 11–18, and only those proceedings "result[ing] in *immediate* actual imprisonment" trigger the right to state-appointed counsel, *id.*, at 13 (emphasis added). Thus, the defendant in *Nichols* had no right to appointed counsel in the DUI proceeding because he was not immediately imprisoned at the conclusion of that proceeding. The uncounseled DUI, valid when imposed, did not later become invalid be-

cause it was used to enhance the length of imprisonment that followed a separate and subsequent felony proceeding. Just so here, *amicus* contends: Shelton had no right to appointed counsel in the Circuit Court because he was not incarcerated immediately after trial; his conviction and suspended sentence were thus valid and could serve as proper predicates for actual imprisonment at a later hearing to revoke his probation. See Fried Brief 14, 23–24.

*Gagnon* and *Nichols* do not stand for the broad proposition *amicus* would extract from them. The dispositive factor in those cases was not whether incarceration occurred immediately or only after some delay. Rather, the critical point was that the defendant had a recognized right to counsel when adjudicated guilty of the felony offense for which he was imprisoned. See *Nichols*, 511 U. S., at 743, n. 9 (absent waiver, right to appointed counsel in felony cases is absolute). Unlike this case, in which revocation of probation would trigger a prison term imposed for a misdemeanor of which Shelton was found guilty without the aid of counsel, the sentences imposed in *Nichols* and *Gagnon* were for felony convictions—a federal drug conviction in *Nichols*, and a state armed robbery conviction in *Gagnon*—for which the right to counsel is unquestioned. See *Nichols*, 511 U. S., at 747 (relevant sentencing provisions punished only "the last offense committed by the defendant," and did not constitute or "change the penalty imposed for the earlier" uncounseled misdemeanor); *Gagnon*, 411 U. S., at 789 (distinguishing "the right of an accused to counsel in a criminal prosecution" from "the more limited due process right of one who is a probationer or parolee only because he has been convicted of a crime").

Thus, neither *Nichols* nor *Gagnon* altered or diminished *Argersinger*'s command that "no person may be imprisoned *for any offense* . . . unless he was represented by counsel at his trial," 407 U. S., at 37 (emphasis added). Far from

supporting *amicus'* position, *Gagnon* and *Nichols* simply highlight that the Sixth Amendment inquiry trains on the stage of the proceedings corresponding to Shelton's Circuit Court trial, where his guilt was adjudicated, eligibility for imprisonment established, and prison sentence determined.

*Nichols* is further distinguishable for the related reason that the Court there applied a "less exacting" standard "consistent with the traditional understanding of the sentencing process." 511 U. S., at 747. Once guilt has been established, we noted in *Nichols*, sentencing courts may take into account not only "a defendant's prior convictions, but . . . also [his] past criminal behavior, even if no conviction resulted from that behavior." *Ibid.* Thus, in accord with due process, Nichols "could have been sentenced more severely based simply on *evidence* of the underlying conduct that gave rise" to his previous conviction, *id.,* at 748 (emphasis added), even if he had never been charged with that conduct, *Williams* v. *New York,* 337 U. S. 241 (1949), and even if he had been acquitted of the misdemeanor with the aid of appointed counsel, *United States* v. *Watts,* 519 U. S. 148, 157 (1997) *(per curiam).* That relaxed standard has no application in this case, where the question is whether the defendant may be jailed absent a conviction credited as reliable because the defendant had access to "the guiding hand of counsel," *Argersinger,* 407 U. S., at 40 (internal quotation marks omitted).

*Amicus* also contends that "practical considerations clearly weigh against" the extension of the Sixth Amendment appointed-counsel right to a defendant in Shelton's situation. Fried Brief 23. He cites figures suggesting that although conditional sentences are commonly imposed, they are rarely activated. *Id.,* at 20–22; Tr. of Oral Arg. 20–21 (speculating that "hundreds of thousands" of uncounseled defendants receive suspended sentences, but only "thousands" of that large number are incarcerated upon violating the terms of their probation). Based on these estimations, *ami-*

*cus* argues that a rule requiring appointed counsel in every case involving a suspended sentence would unduly hamper the States' attempts to impose effective probationary punishment. A more "workable solution," he contends, would permit imposition of a suspended sentence on an uncounseled defendant and require appointment of counsel, if at all, only at the probation revocation stage, when incarceration is imminent. Fried Brief 18, 23–24.

*Amicus* observes that probation is "now a critical tool of law enforcement in low level cases." *Id.*, at 22. Even so, it does not follow that preservation of that tool warrants the reduction of the Sixth Amendment's domain that would result from the regime *amicus* hypothesizes. *Amicus* does not describe the contours of the hearing that, he suggests, might precede revocation of a term of probation imposed on an uncounseled defendant. See *id.*, at 24 (raising, but not endeavoring to answer, several potential questions about the nature of the revocation hearing *amicus* contemplates). In Alabama, however, the character of the probation revocation hearing currently afforded is not in doubt. The proceeding is an "informal" one, *Buckelew* v. *State*, 48 Ala. App. 418, 421, 265 So. 2d 202, 205 (Crim. App. 1972), at which the defendant has no right to counsel, and the court no obligation to observe customary rules of evidence, *Martin* v. *State*, 46 Ala. App. 310, 311, 241 So. 2d 339, 340 (Crim. App. 1970).

More significant, the sole issue at the hearing—apart from determinations about the necessity of confinement, see Ala. Code § 15–22–54(d)(4) (1975)—is whether the defendant breached the terms of probation. See *Martin*, 46 Ala. App., at 312, 241 So. 2d, at 341 ("All that is required in a hearing of this character is that the evidence be such as to reasonably satisfy the judge in the exercise of his sound discretion that the defendant has violated a valid condition upon which the sentence was suspended." (internal quotation marks omitted)). The validity or reliability of the underlying conviction is beyond attack. See *Buckelew*, 48 Ala. App., at 421,

265 So. 2d, at 205 ("a probation hearing cannot entertain a collateral attack on a judgment of another circuit").

We think it plain that a hearing so timed and structured cannot compensate for the absence of trial counsel, for it does not even address the key Sixth Amendment inquiry: whether the adjudication of guilt corresponding to the prison sentence is sufficiently reliable to permit incarceration. Deprived of counsel when tried, convicted, and sentenced, and unable to challenge the original judgment at a subsequent probation revocation hearing, a defendant in Shelton's circumstances faces incarceration on a conviction that has never been subjected to "the crucible of meaningful adversarial testing," *United States* v. *Cronic*, 466 U. S. 648, 656 (1984). The Sixth Amendment does not countenance this result.

In a variation on *amicus'* position, the dissent would limit review in this case to the question whether the *imposition* of Shelton's suspended sentence required appointment of counsel, answering that question "plainly no" because such a step "does not deprive a defendant of his personal liberty." *Post*, at 676. Only if the sentence is later activated, the dissent contends, need the Court "ask whether the procedural safeguards attending the imposition of [Shelton's] sentence comply with the Constitution." *Ibid.*

Severing the analysis in this manner makes little sense. One cannot assess the constitutionality of imposing a suspended sentence while simultaneously walling off the procedures that will precede its activation. The dissent imagines a set of safeguards Alabama might provide at the probation revocation stage sufficient to cure its failure to appoint counsel prior to sentencing, including, perhaps, "complete retrial of the misdemeanor violation with assistance of counsel," *post*, at 677. But there is no cause for speculation about Alabama's procedures; they are established by Alabama statute and decisional law, see *supra*, at 666 and this page, and they bear no resemblance to those the dissent invents in its effort to sanction the prospect of Shelton's imprisonment on

an uncounseled conviction.[5]  Assessing the issue before us in light of actual circumstances, we do not comprehend how the procedures Alabama in fact provides at the probation revocation hearing could bring Shelton's sentence within constitutional bounds.[6]

Nor do we agree with *amicus* or the dissent that our holding will "substantially limit the states' ability" to impose probation, Fried Brief 22, or encumber them with a "large, new burden," *post*, at 680.  Most jurisdictions already provide a state-law right to appointed counsel more generous than that afforded by the Federal Constitution.  See

---

[5] In any event, the dissent is simply incorrect that our decision today effectively "deprive[s] the State of th[e] option" of placing an uncounseled defendant on probation, with incarceration conditioned on a guilty verdict following a trial *de novo*.  *Post*, at 677.  That option is the functional equivalent of pretrial probation, as to which we entertain no constitutional doubt.  See *infra*, at 670–672, and n. 12.

Regarding the dissent's suggestion that other "means of retesting (with assistance of counsel) the validity of the original conviction" might suffice, *post*, at 678, n. 3, we doubt that providing counsel after the critical guilt adjudication stage "[would] be of much help to a defendant," for "the die is usually cast when judgment is entered on an uncounseled trial record."  *Argersinger*, 407 U. S., at 41 (Burger, C. J., concurring in result). "[A] large number of misdemeanor convictions take place in police or justice courts which are not courts of record.  Without a drastic change in the procedures of these courts, there would be no way" for the defendant to demonstrate error in the original proceeding or reconstruct evidence lost in the intervening period.  *Nichols* v. *United States*, 511 U. S. 738, 748 (1994).  But we need not here decide whether or what procedural safeguards "short of complete retrial" at the probation revocation stage could satisfy the Sixth Amendment, *post*, at 678; the minimal procedures Alabama *does* provide are plainly insufficient.

[6] Charging that we have "miraculously divined how the Alabama justices would resolve a constitutional question," *post*, at 676, the dissent forgets that this case is here on writ of certiorari to the Alabama Supreme Court. That court ruled in the decision under review that Shelton's sentence violates the Sixth Amendment.  The Alabama Supreme Court has thus *already* spoken on the issue we now address, and in doing so expressed not the slightest hint that revocation-stage procedures—real or imaginary— would affect the constitutional calculus.

*Nichols*, 511 U. S., at 748–749, n. 12. All but 16 States, for example, would provide counsel to a defendant in Shelton's circumstances, either because he received a substantial fine[7] or because state law authorized incarceration for the charged offense[8] or provided for a maximum prison term of one year.[9] See Ala. Code §§ 13A–6–22, 13A–5–7(a)(1), 13A–5–12(a)(1) (1994). There is thus scant reason to believe that a rule conditioning imposition of a suspended sentence on provision of appointed counsel would affect existing practice

---

[7] See N. J. Stat. Ann. § 2A:158A–5.2 (1985); *State* v. *Hermanns*, 278 N. J. Super. 19, 29, 650 A. 2d 360, 366 (1994); N. C. Gen. Stat. § 7A–451(a)(1) (1999); Vt. Stat. Ann., Tit. 13, § 5201 (1998).

[8] See *Alexander* v. *Anchorage*, 490 P. 2d 910, 913 (Alaska 1971) (interpreting Alaska Const., Art. I, § 11, to provide counsel when punishment may involve incarceration); *Tracy* v. *Municipal Court for Glendale Judicial Dist.*, 22 Cal. 3d 760, 766, 587 P. 2d 227, 230 (1978) (Cal. Penal Code Ann. § 686 (West 1985) affords counsel to misdemeanor defendants); Del. Code Ann., Tit. 29, § 4602 (1997); D. C. Code Ann. § 11–2602 (West 2001); Haw. Rev. Stat. § 802–1 (1999); Ill. Comp. Stat., ch. 725, § 113–3 (1992); *Brunson* v. *State*, 182 Ind. App. 146, 149, 394 N. E. 2d 229, 231 (1979) (right to counsel in misdemeanor proceedings guaranteed by Ind. Const., Art. I, § 13); Ky. Rev. Stat. Ann. §§ 31.100(4)(b), 31.110(1) (West 1999); La. Const., Art. I, § 13; Mass. Rule Crim. Proc. 8 (2001); Minn. Rule Crim. Proc. 5.02(1) (2001); Neb. Rev. Stat. § 29–3902 (1995); N. Y. Crim. Proc. Law § 170.10(3)(c) (West 1993); Okla. Stat., Tit. 22, § 1355.6.A (West Supp. 2002); Ore. Rev. Stat. Ann. § 135.050(4) (Supp. 1998); Tenn. Sup. Ct. Rule 13(d)(1) (2001); Tex. Code Crim. Proc. Ann., Art. 26.04(b)(3) (Vernon Supp. 2002); Va. Code Ann. §§ 19.2–159, 19.2–160 (2000); Wash. Super. Ct. Crim. Rule 3.1(a) (2002); W. Va. Code § 50–4–3 (2000); Wis. Stat. § 967.06 (1998); Wyo. Stat. Ann. § 7–6–102 (2001).

[9] See Idaho Code §§ 19–851(d)(2), 19–852(a)(1) (1997); Iowa Rule Crim. Proc. 26 (2002); *Wright* v. *Denato*, 178 N. W. 2d 339, 341–342 (Iowa 1970); Md. Ann. Code, Art. 27A, §§ 2(h)(2), 4(b)(2) (1997 and Supp. 2000); Nev. Rev. Stat. §§ 178.397, 193.120 (2001); N. H. Stat. Ann. §§ 604–A:2(I), 625:9(IV)(a)(1) (West Supp. 2001); N. M. Stat. Ann. §§ 31–16–2(D), 31–16–3(A) (2000); Ohio Rules Crim. Proc. 2(C), 44(A) (2002); Pa. Rule Crim. Proc. 122(A) (2002); 18 Pa. Cons. Stat. § 106(c)(2) (1998); S. D. Codified Laws §§ 23A–40–6, 23–40–6.1, 22–6–2(1) (1998); see also Conn. Gen. Stat. § 51–296(a) (Supp. 2001) (imposition of a "suspended sentence of incarceration with a period of probation" necessitates appointment of counsel).

in the large majority of the States.[10]   And given the current commitment of most jurisdictions to affording court-appointed counsel to indigent misdemeanants while simultaneously preserving the option of probationary punishment, we do not share *amicus'* concern that other States may lack the capacity and resources to do the same.

Moreover, even if *amicus* is correct that "some courts and jurisdictions at least [can]not bear" the costs of the rule we confirm today, Fried Brief 23, those States need not abandon probation or equivalent measures as viable forms of punish-

---

[10] That ten States in this majority do not provide counsel to every defendant who receives a suspended sentence hardly supports the dissent's dire predictions about the practical consequences of today's decision, see *post*, at 679–681, and n. 4.   The circumstances in which those States currently allow prosecution of misdemeanors without appointed counsel are quite narrow.   In Pennsylvania, for example, all defendants charged with misdemeanors enjoy a right to counsel regardless of the sentence imposed, Pa. Rule Crim. Proc. 122(B) (2002); only those charged with "summary offenses" (violations not technically considered crimes and punishable by no more than 90 days' imprisonment, 18 Pa. Cons. Stat. § 106(c)(2) (1998)) may receive a suspended sentence uncounseled.   Pa. Rule Crim. Proc. 122(A) (2002); *Commonwealth* v. *Thomas*, 510 Pa. 106, 111, n. 7, 507 A. 2d 57, 59, n. 7 (1986).   (Typical "summary offenses" in Pennsylvania include the failure to return a library book within 30 days, 18 Pa. Cons. Stat. § 6708 (1998), and fishing on a Sunday, 30 Pa. Cons. Stat. § 2104 (1998).)   Gaps in the misdemeanor defendant's right to appointed counsel in other States that extend protection beyond the Sixth Amendment are similarly slight.   See, *e. g.*, S. D. Codified Laws §§ 23A–40–6.1, 22–6–2(2) (1998) (defendant charged with misdemeanor enjoys absolute right to appointed counsel unless offense punishable by no more than 30 days' imprisonment); Tex. Code Crim. Proc. Ann., Art. 26.04(b)(3) (Vernon Supp. 2002) (counsel must be appointed to all misdemeanor defendants except those tried before a judge who knows sentence will not include imprisonment).

More typical of the situation that results in a suspended sentence, we think, is a case like Shelton's—a prosecution before a jury for third-degree assault, arising out of a fistfight that followed a minor traffic accident, see App. 15, n. 2.   Far from "quite irrelevant," *post*, at 679, that 34 States already provide an attorney in this situation strongly suggests that the added requirement of providing counsel routinely in suspended sentence cases will not prove unduly onerous.

ment. Although they may not attach probation to an imposed and suspended prison sentence, States unable or unwilling routinely to provide appointed counsel to misdemeanants in Shelton's situation are not without recourse to another option capable of yielding a similar result.

That option is pretrial probation, employed in some form by at least 23 States. See App. to Reply Brief for National Association of Criminal Defense Lawyers as *Amicus Curiae* 1a–2a (collecting state statutes). Under such an arrangement, the prosecutor and defendant agree to the defendant's participation in a pretrial rehabilitation program,[11] which includes conditions typical of post-trial probation. The adjudication of guilt and imposition of sentence for the underlying offense then occur only if and when the defendant breaches those conditions. *Ibid.;* see, *e. g.,* Conn. Gen. Stat. § 54–56e (2001); Pa. Rules Crim. Proc. 310–320, 316 (2002) ("The conditions of the [pretrial rehabilitation] program may be such as may be imposed with respect to probation after conviction of a crime."); N. Y. Crim. Proc. Law § 170.55(3) (McKinney Supp. 2001) (pretrial "adjournment in contemplation of dismissal" may require defendant "to observe certain specified conditions of conduct").[12]

Like the regime urged by *amicus,* this system reserves the appointed-counsel requirement for the "small percent-

---

[11] Because this device is conditioned on the defendant's consent, it does not raise the question whether imposition of probation alone so restrains a defendant's liberty as to require provision of appointed counsel. See Brief for National Association of Criminal Defense Lawyers as *Amicus Curiae* 8; cf. Brief for Respondent 13–16.

[12] There is thus only one significant difference between pretrial probation and the "sensible option" urged by the dissent, *i. e.,* "complete retrial of the misdemeanor violation with assistance of counsel" upon a defendant's violation of probation terms, *post,* at 677. Pretrial probation is substantially less expensive: It permits incarceration after a single trial, whereas the dissent's regime requires two—one (without counsel) to place the defendant on probation, and a second (with counsel) to trigger imprisonment.

age" of cases in which incarceration proves necessary, Fried Brief 21, thus allowing a State to "supervise a course of rehabilitation" without providing a lawyer every time it wishes to pursue such a course, *Gagnon*, 411 U. S., at 784. Unlike *amicus'* position, however, pretrial probation also respects the constitutional imperative that "no person may be imprisoned for any offense . . . unless he was represented by counsel at his trial," *Argersinger*, 407 U. S., at 37.

## C

Alabama concedes that activation of a suspended sentence results in the imprisonment of an uncounseled defendant "for a term that relates to the original offense" and therefore "crosses the line of 'actual imprisonment'" established in *Argersinger* and *Scott.* Reply Brief to *Amicus Curiae* Professor Charles Fried 8. Shelton cannot be imprisoned, Alabama thus acknowledges, "unless the State has afforded him the right to assistance of appointed counsel in his defense," *Scott*, 440 U. S., at 374; see Reply Brief 9. Alabama maintains, however, that there is no constitutional barrier to *imposition* of a suspended sentence that can never be enforced; the State therefore urges reversal of the Alabama Supreme Court's judgment insofar as it vacated the term of probation Shelton was ordered to serve.

In effect, Alabama invites us to regard two years' probation for Shelton as a separate and independent sentence, which "the State would have the same power to enforce [as] a judgment of a mere fine." Tr. of Oral Arg. 6. *Scott*, Alabama emphasizes, squarely held that a fine-only sentence does not trigger a right to court-appointed counsel, Tr. of Oral Arg. 6; similarly, Alabama maintains, probation uncoupled from a prison sentence should trigger no immediate right to appointed counsel. Seen as a freestanding sentence, Alabama further asserts, probation could be enforced, as a criminal fine or restitution order could, in a contempt pro-

ceeding. See Reply Brief 11–12; Reply Brief to *Amicus Curiae* Professor Charles Fried 10–13; Tr. of Oral Arg. 7.

Alabama describes the contempt proceeding it envisions as one in which Shelton would receive "the full panoply of due process," including the assistance of counsel. Reply Brief 12. Any sanction imposed would be for "post-conviction wrongdoing," not for the offense of conviction. Reply Brief to *Amicus Curiae* Professor Charles Fried 11. "The maximum penalty faced would be a $100 fine and five days' imprisonment," Reply Brief 12 (citing Ala. Code § 12–11–30(5) (1995)), not the 30 days ordered and suspended by the Alabama Circuit Court, see *supra*, at 658.

There is not so much as a hint, however, in the decision of the Supreme Court of Alabama, that Shelton's probation term is separable from the prison term to which it was tethered. Absent any prior presentation of the position the State now takes,[13] we resist passing on it in the first instance. Our resistance to acting as a court of first view instead of one of review is heightened by the Alabama Attorney General's acknowledgment at oral argument that he did not know of any State that imposes, postconviction, on a par with a fine, a term of probation unattached to a suspended sentence. Tr. of Oral Arg. 8. The novelty of the State's current position is further marked by the unqualified statement in Alabama's opening brief that, "[b]y reversing Shelton's suspended sentence, the [Supreme Court of Alabama] correspondingly vacated the two-year probationary term." Brief for Petitioner 6.

---

[13] Not until its reply brief did the State convey that, as it comprehends *Argersinger* and *Scott*, "there is no possibility that Shelton's suspended sentence will be activated if he violates the terms of his probation." Reply Brief 9. Before the Supreme Court of Alabama, the State's position coincided with the position now argued by *amicus*. See State's Brief and Argument on Petition for Writ of Certiorari to the Alabama Court of Criminal Appeals, p. 31, and State's Brief and Argument in Support of its Application for Rehearing, in No. 1990031 (Ala. Sup. Ct.), p. 32.

In short, Alabama has developed its position late in this litigation and before the wrong forum. It is for the Alabama Supreme Court to consider before this Court does whether the suspended sentence alone is invalid, leaving Shelton's probation term freestanding and independently effective. See *Hortonville Joint School Dist. No. 1* v. *Hortonville Ed. Assn.*, 426 U. S. 482, 488 (1976) ("We are, of course, bound to accept the interpretation of [the State's] law by the highest court of the State."). We confine our review to the ruling the Alabama Supreme Court made in the case as presented to it: "[A] defendant who receives a suspended or probated sentence *to imprisonment* has a constitutional right to counsel." App. 40 (emphasis added); see Brief for Petitioner 6. We find no infirmity in that holding.

\* \* \*

Satisfied that Shelton is entitled to appointed counsel at the critical stage when his guilt or innocence of the charged crime is decided and his vulnerability to imprisonment is determined, we affirm the judgment of the Supreme Court of Alabama.

*It is so ordered.*

JUSTICE SCALIA, with whom THE CHIEF JUSTICE, JUSTICE KENNEDY, and JUSTICE THOMAS join, dissenting.

In *Argersinger* v. *Hamlin*, 407 U. S. 25, 37 (1972), we held that "absent a knowing and intelligent waiver, *no person may be imprisoned* for any offense . . . unless he was represented by counsel at his trial." (Emphasis added.) Although, we said, the "run of misdemeanors will not be affected" by this rule, "in those *that end up in the actual deprivation of a person's liberty,* the accused will receive the benefit" of appointed counsel. *Id.*, at 40 (emphasis added). We affirmed this rule in *Scott* v. *Illinois*, 440 U. S. 367 (1979), drawing a bright line between imprisonment and

the mere threat of imprisonment: "[T]he central premise of *Argersinger*—that actual imprisonment is a penalty different in kind from fines *or the mere threat of imprisonment*—is eminently sound and warrants adoption of *actual imprisonment* as the line defining the constitutional right to appointment of counsel." *Id.*, at 373 (emphasis added). We have repeatedly emphasized actual imprisonment as the touchstone of entitlement to appointed counsel. See, *e. g., Glover* v. *United States*, 531 U. S. 198, 203 (2001) ("any amount of *actual jail time* has Sixth Amendment significance" (emphasis added)); *M. L. B.* v. *S. L. J.*, 519 U. S. 102, 113 (1996) ("right [to appointed counsel] does not extend to nonfelony trials if no term of imprisonment is *actually imposed*" (emphasis added)); *Lassiter* v. *Department of Social Servs. of Durham Cty.*, 452 U. S. 18, 26 (1981) (the Court "has refused to extend the right to appointed counsel to include prosecutions which, though criminal, *do not result in* the defendant's *loss of personal liberty*" (emphasis added)).

Today's decision ignores this long and consistent jurisprudence, extending the misdemeanor right to counsel to cases bearing the mere threat of imprisonment. Respondent's 30-day suspended sentence, and the accompanying 2-year term of probation, are invalidated for lack of appointed counsel even though respondent has not suffered, and may never suffer, a deprivation of liberty. The Court holds that the suspended sentence violates respondent's Sixth Amendment right to counsel because it *"may* 'end up in the actual deprivation of [respondent's] liberty,'" *ante*, at 658 (emphasis added), *if* he someday violates the terms of probation, *if* a court determines that the violation merits revocation of probation, Ala. Code § 15–22–54(d)(1) (1995), and *if* the court determines that no other punishment will "adequately protect the community from further criminal activity" or "avoid depreciating the seriousness of the violation," § 15–22–54(d)(4). And to all of these contingencies there must yet

be added, before the Court's decision makes sense, an element of rank speculation. Should all these contingencies occur, the Court speculates, the Alabama Supreme Court would mechanically apply its decisional law applicable to routine probation revocation (which establishes procedures that the Court finds inadequate) rather than adopt special procedures for situations that raise constitutional questions in light of *Argersinger* and *Scott. Ante,* at 666–668. The Court has miraculously divined how the Alabama justices would resolve a constitutional question.[1]

. But that question is not the one before us, and the Court has no business offering an advisory opinion on its answer. We are asked to decide whether "imposition of a suspended or conditional sentence in a misdemeanor case invoke[s] a defendant's Sixth Amendment right to counsel." Pet. for Cert. i. Since *imposition* of a suspended sentence does not deprive a defendant of his personal liberty, the answer to *that* question is plainly no. In the future, *if and when* the State of Alabama seeks to imprison respondent on the previously suspended sentence, we can ask whether the procedural safeguards attending the imposition of that sentence comply with the Constitution. But that question is *not* before us now. Given our longstanding refusal to issue advisory opinions, *Hayburn's Case,* 2 Dall. 409 (1792), particularly with respect to constitutional questions (as to which we seek to avoid even *non*-advisory opinions, *Ashwander* v. *TVA,* 297 U. S. 288, 347 (1936) (Brandeis, J., concurring)), I am amazed by the Court's conclusion that it "makes little

---

[1] The Court says that the Alabama Supreme Court has already resolved this question, since, in finding that respondent's sentence violated the Sixth Amendment, it "expressed not the slightest hint that revocation-stage procedures . . . would affect the constitutional calculus." *Ante,* at 668, n. 6. Indeed it did not, and that was precisely its error. It did not answer (because it did not consider) the question whether procedures attending the probation revocation proceeding could cure the absence of counsel at trial.

sense" to limit today's decision to the question presented (the constitutionality of imposing a suspended sentence on uncounseled misdemeanants) and to avoid a question *not* presented (the constitutionality of the "procedures that will precede its activation"). *Ante*, at 667.

Although the Court at one point purports to limit its decision to suspended sentences imposed on uncounseled misdemeanants in States, like Alabama, that offer only "minimal procedures" during probation revocation hearings, see *ante*, at 668, n. 5, the text of today's opinion repudiates that limitation. In answering the question we asked *amicus* to address—whether "the Sixth Amendment permit[s] activation of a suspended sentence upon the defendant's violation of the terms of probation"—the Court states without qualification that "it does not." *Ante*, at 662. Thus, when the Court says it "doubt[s]" that any procedures attending the reimposition of the suspended sentence "could satisfy the Sixth Amendment," *ante*, at 668, n. 5, it must be using doubt as a euphemism for certitude.

The Court has no basis, moreover, for its "doubt." Surely the procedures attending reimposition of a suspended sentence would be adequate if they required, upon the defendant's request, complete retrial of the misdemeanor violation with assistance of counsel. By what right does the Court deprive the State of that option?[2] It may well be a sensible

---

[2] The Court asserts that pretrial probation, which its opinion permits, is the "functional equivalent" of post-trial probation with later retrial if the suspended sentence is to be activated. Even if that were so, I see no basis for forcing the State to employ one "functional equivalent" rather than the other. But in fact there is nothing but the Court's implausible speculation to support the proposition that pretrial probation will "yiel[d] a similar result," *ante*, at 671. That would certainly be a curious coincidence, inasmuch as pretrial probation has the quite different purpose of conserving prosecutorial and judicial resources by forgoing trial. See, *e. g.*, 3a U. S. Dept. of Justice, United States Attorneys' Manual § 9–22.000 (1988); H. Abadinsky, Probation and Parole: Theory and Practice 348–349 (3d ed. 1987) (pretrial probation programs "use the fact that an arrest has

option, since most defendants will be induced to comply with the terms of their probation by the mere threat of a retrial that could send them to jail, and since the expense of those rare, counseled retrials may be much less than the expense of providing counsel initially in all misdemeanor cases that bear a possible sentence of imprisonment. And it may well be that, in some cases, even procedures short of complete retrial will suffice.[3]

---

occurred as a means of identifying defendants in need of treatment or, at least, not in need of criminal prosecution"). Moreover, pretrial probation is generally available only for minor offenses, App. to Reply Brief for National Association of Criminal Defense Lawyers as *Amicus Curiae* 1a, and is available in States (*e. g.*, Alabama) that also employ post-trial probation, *id.*, at 3a. If the thesis that it is the "functional equivalent" of post-trial probation were true, we would expect to see pretrial probation used for both major and minor crimes and to see it used in place of, not in addition to, post-trial probation.

[3] The Court quotes Chief Justice Burger's concurrence in *Argersinger* v. *Hamlin*, 407 U. S. 25 (1972), to support its "doubt that providing counsel after the critical guilt adjudication stage '[would] be of much help to a defendant,' for 'the die is usually cast when judgment is entered on an uncounseled trial record.' *Argersinger*, 407 U. S., at 41." *Ante*, at 668, n. 5. But that passage was addressing the limited benefits of *"[a]ppeal* from a conviction after an uncounseled trial," *Argersinger, supra*, at 41 (emphasis added), and was doubtless correct in light of the uniformly restricted scope of appellate review. But it makes no sense to transfer the Chief Justice's concerns to unknown and unknowable forms of probation revocation proceedings, which may provide various means of retesting (with assistance of counsel) the validity of the original conviction. The Court notes that a "large number of misdemeanor convictions take place in police or justice courts which are not courts of record," making it quite difficult for a defendant "to demonstrate error in the original proceeding." *Ante*, at 668, n. 5 (internal quotation marks omitted). But it is entirely irrelevant whether a *"large number of misdemeanor convictions"* take place in police or justice courts. What matters is whether a record is available in misdemeanor convictions *that result in a suspended prison sentence* (a presumably small fraction of all misdemeanor convictions). We have no reliable information on that point other than the experience of the present case—which shows that Alabama does provide a record which counsel can comb for substantive and procedural inadequacy. Re-

Our prior opinions placed considerable weight on the practical consequences of expanding the right to appointed counsel beyond cases of actual imprisonment. See, *e. g., Scott,* 440 U. S., at 373 (any extension of *Argersinger* would "impose unpredictable, but necessarily substantial, costs on 50 quite diverse States"); see also *Argersinger,* 407 U. S., at 56–62 (Powell, J., concurring in result) (same). Today, the Court gives this consideration the back of its hand. Its observation that "[a]ll but 16 States" already appoint counsel for defendants like respondent, *ante,* at 669, is interesting but quite irrelevant, since today's holding is not confined to *defendants like respondent.* Appointed counsel must henceforth be offered before *any* defendant can be awarded a suspended sentence, no matter how short. Only 24 States have announced a rule of this scope.[4] Thus, the Court's deci-

spondent was tried before a judge in State District Court, a court of record; he subsequently exercised his right, under Ala. Code § 12–12–71 (1995), to trial *de novo* before a jury in State Circuit Court, a higher court of record. See *Ex parte Maye,* 799 So. 2d 944, 947 (Ala. 2001).

[4] Ten of the thirty-four States cited by the Court do not offer appointed counsel in all cases where a misdemeanor defendant might suffer a suspended sentence. Six States guarantee counsel only when the authorized penalty is *at least* three or six months' imprisonment. See Idaho Code §§ 19–851(d)(2), 19–852(a) (1948–1997); *State* v. *Hardman,* 120 Idaho 667, 669–670, 818 P. 2d 782, 784–785 (App. 1991); Md. Ann. Code, Art. 27A, §§ 2(h)(2), 4(b)(2) (1957–1997); Nev. Rev. Stat. §§ 178.397, 193.120 (1996); N. M. Stat. Ann. §§ 31–16–2, 31–16–3 (2000); *State* v. *Woodruff,* 124 N. M. 388, 396, n. 3, 951 P. 2d 605, 613, n. 3 (1997); Ohio Rules Crim. Proc. 2(C), 44(A) (2002); 18 Pa. Cons. Stat. § 106(c) (1998); Pa. Rules Crim. Proc. 122(A), (B) (2002); *Commonwealth* v. *Thomas,* 510 Pa. 106, 111, n. 7, 507 A. 2d 57, 59, n. 7 (1986). South Dakota does not provide counsel where the maximum permissible sentence is 30 days' imprisonment, S. D. Codified Laws § 22–6–2 (1998), if "the court has concluded that [the defendant] will not be deprived of his liberty if he is convicted," §§ 23A–40–6, 23A–40–6.1. Texas's statute declares that appointed counsel should be offered to any defendant "charged with a misdemeanor punishable by confinement," Tex. Code Crim. Proc. Ann., Art. 26.04(b)(3) (Vernon Supp. 2002), but the state courts have construed this provision to require appointment only "when the court *knows* that the punishment it will assess includes

sion imposes a large, new burden on a majority of the States, including some of the poorest (*e. g.*, Alabama, Arkansas, and Mississippi, see U. S. Dept. of Commerce, Bureau of Census,

imprisonment or when the trial is before the jury and the possible punishment includes imprisonment." *Fortner* v. *State*, 764 S. W. 2d 934, 935 (Tex. App. 1989) (emphasis added). Thus, nothing in Texas law assures counsel in a misdemeanor bench trial resulting in a suspended sentence. Finally, in two of the States that appoint counsel when imprisonment is "likely" to be imposed, the courts have not yet decided whether the likelihood of a *suspended* sentence qualifies, but the answer—as has been held with respect to the similarly phrased Pennsylvania statutes cited *supra*— is probably no. N. J. Stat. Ann. §2A:158A–5.2 (1985); *Rodriguez* v. *Rosenblatt*, 58 N. J. 281, 295, 277 A. 2d 216, 223 (1971); N. C. Gen. Stat. §7A–451(a)(1) (1999); *State* v. *McCoy*, 304 N. C. 363, 370, 283 S. E. 2d 788, 791–792 (1981).

The District of Columbia must also be numbered among the jurisdictions whose law is altered by today's decision. District of Columbia Code Ann. §11–2602 (West 2001) guarantees counsel in "all cases where a person faces a loss of liberty *and* the Constitution or any other law requires the appointment of counsel." (Emphasis added.) Today's decision, discarding the rule of *Argersinger*, brings suspended sentences within this prescription.

The Court asserts that the burden of today's decision on these jurisdictions is small because the "circumstances in which [they] currently allow prosecution of misdemeanors without appointed counsel are quite *narrow*." *Ante*, at 670, n. 10 (emphasis added). But the narrowness of the range of circumstances covered says nothing about the number of suspended-sentence cases covered. Misdemeanors punishable by less than six months' imprisonment may be a narrow category, but it may well include the vast majority of cases in which (precisely *because* of the minor nature of the offense) a suspended sentence is imposed. There is simply nothing to support the Court's belief that few offenders are prosecuted for crimes in which counsel is not already provided. The Court minimizes the burden on Pennsylvania by observing that the "summary offenses" for which it permits uncounseled suspended sentences include such rarely prosecuted crimes as failing to return a library book within 30 days and fishing on Sunday. *Ibid.* But they also include first-offense minor retail theft, driving with a suspended license, and harassment (which includes minor assault). See *Thomas, supra*, at 109, 507 A. 2d, at 58; 75 Pa. Cons. Stat. §1543(b)(1) (Supp. 2002); 18 Pa. Cons. Stat. §§2709(a), (c)(1) (2000). Over against the Court's uninformed intuition, there is an *amicus* brief

Statistical Abstract of the United States 426 (2001)). That burden consists not only of the cost of providing state-paid counsel in cases of such insignificance that even financially prosperous defendants sometimes forgo the expense of hired counsel; but also the cost of enabling courts and prosecutors to respond to the "over-lawyering" of minor cases. See *Argersinger, supra,* at 58–59 (Powell, J., concurring in result). Nor should we discount the burden placed on the minority 24 States that currently provide counsel: that they keep their current disposition forever in place, however imprudent experience proves it to be.

Today's imposition upon the States finds justification neither in the text of the Constitution, nor in the settled practices of our people, nor in the prior jurisprudence of this Court. I respectfully dissent.

---

filed by States that include 2 of the 10 with exceptions that the Court calls "narrow," affirming that the rule the Court has adopted today will impose "significant burdens on States." Brief for Texas, Ohio, Montana, Nebraska, Delaware, Louisiana, and Virginia as *Amici Curiae* 22.