855 So.2d 582 (2002)
C.M.
v.
STATE.
CR-01-0873.
Court of Criminal Appeals of Alabama.
November 22, 2002.
Rehearing Denied February 21, 2003.
*583 Trant Bullard, Dothan, for appellant.
William H. Pryor, Jr., atty. gen., and Yvonne A.H. Saxon, asst. atty. gen., for appellee.

On Application For Rehearing
COBB, Judge.
The opinion of September 27, 2002, is withdrawn, and the following opinion substituted therefor.
The juvenile court of Covington County, after hearing ore tenus evidence, adjudged C.M. to be delinquent on the charges of unlawful possession of marijuana for other than personal use, § 13A-12-214, Ala.Code 1975, and unlawful possession of drug paraphernalia, § 13A-12-260, Ala.Code 1975. C.M. was placed on supervised probation with the Covington County Department of Youth Services for one year.[1] C.M. contends for the first time on appeal that the juvenile court erred by not appointing counsel to represent C.M. at C.M.'s delinquency hearing as required by § 12-15-63(a), Ala.Code 1975.
Section 12-15-63(a), Ala.Code 1975, provides:
"(a) In delinquency and in need of supervision cases, a child and his parents, guardian or custodian shall be advised by the court or its representative at intake that the child has the right to be represented at all stages of the proceedings by counsel retained by them or, if they are unable to afford counsel, by counsel appointed by the court.
"If counsel is not retained for the child in a proceeding in which there is a reasonable likelihood such may result in a commitment to an institution in which the freedom of the child is curtailed, counsel shall be appointed for the child.
"The court may appoint counsel in any case when it deems such in the interest of justice."
(Emphasis added.)
In addition to the statute, Rule 11, Ala. R.Juv.P., sets forth various rights afforded a juvenile after a juvenile is taken into *584 custody. Rule 11(F), Ala.R.Juv.P., sets forth the following as "[a]dditional rights of the child":
"(1) The child has a right to be represented by counsel at all stages of the proceeding.
"(a) In any proceeding in which there is a reasonable likelihood that the child may be committed to an institution in which the child's freedom may be curtailed, and in which proceeding counsel has not been retained, counsel shall be appointed for the child.

"(b) In all other proceedings, the court may appoint counsel in any case upon request or when it deems such appointment to be in the interest of justice."
(Emphasis added.)
C.M. was arrested on October 18, 2000. The case was set for trial on April 5, 2001. C.M. was represented by retained counsel at this time. On April 5, 2001, the parties and the juvenile judge discussed the possibility of disposing of the case pursuant to a consent decree. C.M.'s father, D.M., who appeared with his son, stated that he needed to discuss this matter with his ex-wife who was attending law school in Massachusetts. To accommodate C.M., the juvenile court continued the case until August 15, 2001. On August 15, 2001, C.M.'s retained counsel withdrew from the case. To afford C.M. time to retain new counsel, the case was rescheduled for trial on October 10, 2001. On October 10, 2001, C.M. and his father appeared for trial without counsel. The juvenile court asked D.M. if C.M. was "waiving the right to an attorney." (R. 9.) D.M. responded, "[n]o, sir" (R. 9), and explained that poor health had prevented his being "able to make an arrangement with an attorney ... [and] get this turned over to another counsel." (R. 13.).[2] The juvenile court interpreted D.M.'s comments that he had been unable to obtain counsel as a request for a continuance in order to retain counsel and conducted a hearing on the motion to continue. The evidence presented during the hearing was that although D.M. was in poor health, his poor health had not prevented his attending to other obligations such as court appearances, meeting with the Department of Youth Services, and attending his own doctor appointments. The State asserted that since April 5, 2001, two of its three witnesses had become unavailable to testify. The State also asserted that it was afraid that if the case was continued again it might lose its third and final witness against C.M. In denying the motion to continue, the juvenile court stated:
"Mr. [M.], you have kept all three court appearances, including today, you've been able to appear. You testified just a minute ago that you're able to keep all your monthly appointments with the doctor, and you've responded to coming to Youth Services' office when they requested. So, I'm going to deny your motion for a continuance. Now, the Alabama Code in § 12-15-63(a), states that if counsel is not retained for a child in a proceeding in which there is a reasonable likelihood such may result in a commitment to an institution in which the freedom of the child is curtailed, counsel shall be appointed for the *585 child. Now in light of that Code section, I'm going to state for the record that if your son were found guilty of the charges that have been brought against him, that we're hearing today, I would not be committing him to an institution in which his freedom is curtailed. At most, he would be placed on probation and ordered to pay a fine. There would not be any sort of commitment to any juvenile detention facility or any juvenile facility, such as the HIT program or the Department of Youth Services. I'm stating that for the record, that he is not looking at being committed to any juvenile facility in the event that he is found guilty of these charges. So, for that reason, I'm not going to appoint counsel to represent him, because the law does not require me to. I will deny the motion for the continuance and we will proceed with the hearing at this time."
(R. 24-26.)(Emphasis added.)
At the conclusion of the delinquency hearing, C.M. was adjudicated a delinquent based on the charged offenses and the sentence was imposed.
We find no reversible error in the juvenile court's failure to appoint counsel to represent C.M. at C.M.'s delinquency hearing. The juvenile court specifically stated for the record that C.M. would not be committed to a youth detention facility. Instead, the juvenile court placed C.M. on probation. See § 12-15-71(c)(2), Ala.Code 1975, which permits the juvenile court to place a child found to be delinquent "on probation under conditions and limitations the court may prescribe."[3] Section 12-15-63(a), Ala.Code 1975, mandates appointment of counsel only where "there is a reasonable likelihood" that the proceeding may conclude with the child's being committed to an institution in which his freedom is curtailed.
Thus, in the instant proceedings, the juvenile court correctly asserted that C.M. was not entitled to appointed counsel because the juvenile court had determined that C.M. would not lose his liberty if he was found to be a delinquent child. We note that should proceedings to revoke C.M.'s probation ever be initiated, Alabama v. Shelton, 535 U.S. 654, 122 S.Ct. 1764, 152 L.Ed.2d 888 (2002), provides that punishment resulting in the loss of liberty cannot be imposed because C.M. was not provided counsel at the delinquency hearing. Although Shelton is distinguishable from the instant case in that Shelton was indigent and he was sentenced to a suspended term of imprisonment without the benefit of counsel, the Shelton Court stated:
"Once the prison term is triggered, the defendant is incarcerated not for the probation violation, but for the underlying offense. The uncounseled conviction at that point `result[s] in imprisonment,' Nichols [v. United States], 511 U.S. [738,] at 746 ... [ (1994) ]; it `end[s] up in the actual deprivation of a person's liberty,' Argersinger [v. Hamlin], 407 U.S. [25,] at 40 ... [ (1972) ]. This is precisely what the Sixth Amendment, as interpreted in Argersinger and Scott [v. Illinois, 440 U.S. 367 (1979) ], does not allow."
Shelton, 535 U.S. at 662, 122 S.Ct. at 1770.
*586 Alabama's statute provides that counsel "shall" be appointed[4] for a juvenile in a delinquency proceeding who does not have retained counsel if "there is a reasonable likelihood [the proceeding] may result in a commitment to an institution in which the freedom of the child is curtailed."[5] Thus, the above constitutional principle expressed in Shelton is equally applicable to nonindigent juvenile proceedings as a result of which liberty may be lost. The United States Supreme Court held in Shelton that
"a suspended sentence that may `end up in the actual deprivation of a person's liberty' may not be imposed unless that defendant was accorded `the guiding hand of counsel' in the prosecution for the crime charged. Argersinger [v. Hamlin], 407 U.S. [25], at 40 [ (1972) ]."
Shelton, 535 U.S. at 658, 122 S.Ct. at 1767. The Shelton Court continued by emphasizing that "`no person may be imprisoned for any offense ... unless he was represented by counsel at his trial.' Argersinger [v. Hamlin,] 407 U.S. [25], at 37 ... [(1972) ] (emphasis added)." Id. Thus, pursuant to Shelton, by denying C.M. counsel during the guilt phase of the proceedings, the juvenile court has foreclosed its option of later placing C.M. in a youth detention facility. However, the juvenile-offender statutes provide a variety of sentencing options short of confinement. See § 12-15-71, Ala.Code 1975.
For the reasons set forth above, the juvenile court's adjudication of delinquency for unlawful possession of marijuana for other than personal use and unlawful possession of drug paraphernalia is affirmed.
OPINION OF SEPTEMBER 27, 2002, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; AFFIRMED.
McMILLAN, P.J., and BASCHAB, SHAW, and WISE, JJ., concur.
NOTES
[1] As conditions of his probation, C.M. was ordered to be on good behavior at all times; not to partake of alcoholic beverages, tobacco products, or illegal drugs; not to be around individuals in possession of items or be present at a location, such as a party, were those items were present. Additionally, as conditions of probation C.M. was ordered to submit to random drug tests as directed by his juvenile probation officer, to pay a monthly supervision fee, and to follow the rules issued by the probation officer. Also, C.M.'s driver's license was suspended for six months. (C.M. was 15 years old at the time of the hearing. It was ordered that the suspension would begin when he obtained his driver's license at age 16.)
[2] During the discourse between D.M. and the Court, D.M. never asked the Court to appoint counsel to represent C.M. Thus, the State contends that the instant claim was not preserved for appellate review. Because § 12-15-63(a), Ala.Code 1975, states that where a nonindigent child fails to retain counsel, the juvenile court "shall" appoint counsel for the child if there is a reasonable likelihood that child will be committed to an institution, no objection was required to present the issue for appellate review.
[3] Section 12-15-71(c), Ala.Code 1975, provides in part:

"(c) If a child is found to be delinquent or in need of supervision, the court may make any of the following orders or dispositions for the child's supervision, care, and rehabilitation:
"(1) Permit the child to remain with the parents, guardian, or other custodian of the child, subject to the conditions and limitations the court may prescribe.
"(2) Place the child on probation under conditions and limitations the court may prescribe."
[4] The juvenile court has the authority, pursuant to § 12-15-11, Ala.Code 1975, to recover from a juvenile's parents the cost of appointed counsel. Section 12-15-11, Ala.Code 1975, states:

"If, after due notice to the parents or other persons legally obligated to care for and support the child and after a hearing, the court finds that they are financially able to pay all or part of the court costs, as provided by law, attorney fees and expenses with respect to examination, treatment, care or support of the child incurred in carrying out the provisions of this chapter, the court shall order them to pay the same and may prescribe the manner of payment. Unless otherwise ordered, payment shall be made to the clerk of the court for remittance to those to whom compensation is due. If the child shall have an estate in the hands of a guardian or trustee, such guardian or trustee may be required to pay in a like manner. If the parent or other legally obligated person willfully fails or refuses to pay such sum, the court may proceed against him for contempt or the order may be filed and shall constitute a civil judgment."
[5] Section 12-15-63(a), Ala.Code 1975 (emphasis added).