507 A.2d 57

COMMONWEALTH of Pennsylvania

v.

James Arden THOMAS, Jr., Appellant.

COMMONWEALTH of Pennsylvania

v.

Emily Clay BRUCE, Appellant.

Supreme Court of Pennsylvania.

Argued Sept. 19, 1985.

Decided March 26, 1986.

Raymond H. Bogaty, Office of the Public Defender, Mercer, for appellants.

Samuel J. Orr, IV, Dist. Atty., Charles S. Hersh, Asst. Dist. Atty., James P. Epstein, Mercer, for appellee.

Before NIX, C.J., and LARSEN, McDERMOTT, HUTCH-INSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

On May 20, 1982, appellant Emily Clay Bruce was found guilty by a judge of retail theft (second offense) for the theft of a gold necklace valued at $2.84. On September 9, 1982, appellant James Arden Thomas, Jr. pleaded guilty to retail theft (second offense) for the theft of a set of Champion spark plugs valued at $12.71. Because each of the appellants had a prior conviction for retail theft, the aforementioned crimes which are the subject of this appeal were graded as misdemeanors of the second degree, rather than summary offenses, and appellants were sentenced accordingly: appellant Bruce was sentenced to one year probation, and appellant Thomas was sentenced to seven days imprisonment.[1] On appeal, these cases were consolidated and the Superior Court affirmed per curiam, 337 Pa.Super. 632, 487 A.2d 441 (1984).

In these appeals, appellants present two related questions: 1) whether a prior conviction for the summary offense of retail theft, based upon an uncounseled guilty plea, may be used to enhance the grading and sentencing of a second conviction for the same offense; and 2) whether a prior conviction for the summary offense of retail theft, resulting from an uncounseled guilty plea entered when the defendant was a juvenile, may be used to enhance the

1. Appellant Thomas was permitted to serve his sentence on weekend days of his choice.

grading and sentencing of a second conviction for the same offense.

The Crimes Code provides in pertinent part:

Retail theft constitutes a:

(i) Summary offense when the offense is a first offense and the value of the merchandise is less than $150.

(ii) Misdemeanor of the second degree when the offense is a second offense and the value of the merchandise is less than $150.

(iii) Misdemeanor of the first degree when the offense is a first or second offense and the value of the merchandise is $150 or more.

18 Pa.C.S.A. § 3929(b)(1).[2]

■ Appellants' first convictions for retail theft constituted summary offenses: In 1978, each appellant pleaded guilty, without the assistance of counsel, to one charge of retail theft;[3] at the times of their respective guilty pleas,

---

**2.** The Crimes Code sets forth the permitted sentences for each type of crime:

A person who has been convicted of an offense may be sentenced to pay a fine not exceeding:

. . . .

(3) $10,000, when the conviction is of a misdemeanor of the first degree.

(4) $5,000, when the conviction is of a misdemeanor of the second degree.

. . . .

(6) $300, when the conviction is of a summary offense.

18 Pa.C.S.A. § 1101.

A person who has been convicted of a misdemeanor may be sentenced to imprisonment for a definite term which shall be fixed by the court and shall be not more than:

(1) Five years in the case of a misdemeanor of the first degree.

(2) Two years in the case of a misdemeanor of the second degree.

18 Pa.C.S.A. § 1104.

A person who has been convicted of a summary offense may be sentenced to imprisonment for a term which shall be fixed by the court at not more than 90 days.

18 Pa.C.S.A. § 1105.

**3.** Appellant Thomas pleaded guilty by way of a citation or summons mailed to him, which he simply returned with the required fine; he never actually appeared in court. *See* Pa.R.Crim.P. 51, 53(b), and 58. It is not clear from the record before this Court how appellant Bruce's guilty plea was effected.

appellant Bruce was sixteen years of age and appellant Thomas was seventeen years old.[4]

Appellants first contend that defendants in all summary criminal matters should have a right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution, but that even if they do not, the interests of justice dictate that defendants should have the right to counsel in any summary proceeding "if the Commonwealth is to use the summary convictions for enhancement."[5] We disagree.

The United States Supreme Court has "delimit[ed] the constitutional right to appointed counsel in state criminal proceedings," and has held that "the Federal Constitution does not require a state trial court to appoint counsel for a criminal defendant" who is not actually subjected to a term of imprisonment upon conviction. *Scott v. Illinois*, 440 U.S. 367, 373, 369, 99 S.Ct. 1158, 1162, 1160, 59 L.Ed.2d 383 (1979). *See also Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972).

This Court has implemented the holdings of these cases by way of Rule 316, Pa.R.Crim.P.:

(a) Counsel shall be assigned in all summary cases to all defendants who are without financial resources or who are otherwise unable to employ counsel *when there is a likelihood that imprisonment will be imposed.*

. . . .

4. Although the Juvenile Act generally governs the disposition of juveniles who commit delinquent acts—acts which would be crimes if they had been committed by an adult—the Juvenile Act also provides that the term "delinquent act" does not include summary offenses. 42 Pa.C.S.A. § 6302, 6322. Thus, even though both appellants were juveniles when they were charged with retail theft in 1978, they were not eligible for consideration under the Juvenile Act because a first offense of retail theft of merchandise valued at less than $150 is a summary offense.

5. The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." This right has been made applicable to the states through the Fourteenth Amendment. *See, e.g., Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

(c)(i) The court, of its own motion, shall assign counsel to represent a defendant whenever the interests of justice require it.

(Emphasis added.)

■ Thus, there is no requirement, either under the United States Constitution or under the Pennsylvania Constitution, that defendants in all summary cases be provided with counsel.[6] Further, there was no requirement in this case, either as a matter of federal or state constitutional law, that either appellant be provided with counsel when he or she was charged with a summary offense, since there was no likelihood that imprisonment would be imposed.[7]

It is clear that appellants' first convictions were valid at the time they were entered and that appellants' sentences based upon those convictions were legal. The question remains, however, whether appellants' first uncounseled convictions can now be used to raise the degree of their subsequent offenses from summary offenses to misdemeanors, with the attendant enhancement of potential sentences.

6. Article I, Section 9 of the Pennsylvania Constitution provides that "In all criminal prosecutions the accused hath a right to be heard by himself and his counsel...." This Court has never defined the limits of this right with regard to defendants who have been charged with summary offenses. However, any differences that may exist between the right to counsel granted by the Federal Constitution and the right to counsel granted by the Pennsylvania Constitution are not relevant in this case.

7. In fact, appellant Bruce still has never received a sentence of imprisonment; even after her second conviction for retail theft, she received only a sentence of probation. We note that appellant Bruce's argument—that a defendant should have a right to counsel at trial even when no sentence of imprisonment is imposed because there is still a "threat of deprivation of one's liberty" due to the fact that "a technical violation of the probation order could result in a revocation and subsequent incarceration"—is preposterous. There is only one person who has control over appellant Bruce's ability to fulfill the terms of her probation, and that is appellant Bruce herself. The Commonwealth is not responsible for ensuring that a defendant complies with the terms of his or her probation, and it certainly is not obligated to provide trial counsel to a defendant who may later choose to incur a risk of incarceration by choosing to violate the terms of his or her probation.

A majority of the United States Supreme Court has held that an uncounseled misdemeanor conviction obtained under the Illinois statute for retail theft may not be used under an enhanced penalty statute to convert a subsequent misdemeanor into a felony with a prison term. *Baldasar v. Illinois,* 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980) (per curiam).[8] Nevertheless, only this disposition, and not the rationale supporting it, was agreed to by a majority of the Court.[9]

Thus, in *Baldasar,* four Justices were of the opinion that a first uncounseled conviction could never be used to enhance the grading and sentencing of a second offense, 446 U.S. at 224, 100 S.Ct. at 1586 (Stewart, J., concurring, joined by Brennan and Stevens, JJ.), 446 U.S. at 224–29, 100 S.Ct. at 1586–89 (Marshall, J., concurring, joined by Brennan and Stevens, JJ.); four Justices would have held that an uncounseled conviction for which no sentence of imprisonment was imposed may always be used to enhance the grading and sentencing of a subsequent conviction, 446 U.S. at 230–35, 100 S.Ct. at 1589–91 (Powell, J., dissenting, joined by Burger, C.J., and White and Rehnquist, JJ.); and one Justice would have held that an uncounseled conviction may be used to enhance the grading and sentencing of a subsequent offense only if the first offense was one which was not punishable by more than six months imprisonment and for which the defendant was not actually sentenced to a

8. The Illinois retail theft statute upon which Mr. Baldasar's convictions were based provided:
   > Under Illinois law, theft "not from the person" of property worth less than $150 is a misdemeanor punishable by not more than a year of imprisonment and a fine of not more than $1,000.... A second conviction for the same offense, however, may be treated as a felony with a prison term of one to three years.

   446 U.S. at 222–23, 100 S.Ct. at 1585 (citations omitted).

9. In *Baldasar,* the Supreme Court issued a per curiam opinion which consists simply of a statement of the facts, the issue presented for review, the holdings of the state courts, and the Court's disposition of the appeal; the rationales for this disposition are found in the three concurring opinions and one dissenting opinion which accompany the Court's per curiam opinion.

term of imprisonment, 446 U.S. at 229–30, 100 S.Ct. at 1588–89 (Blackmun, J., concurring).[10]

Viewing the facts of this case in light of these concurring and dissenting opinions, it is clear that appellants' claims must fail. Four Justices would uphold the use of appellants' convictions for their summary offenses to enhance the grading and sentencing for their second offenses, because appellants did not actually receive sentences of imprisonment for their summary offenses. A fifth Justice would uphold the use of appellants' first convictions to enhance the grading and sentencing for their second offenses, because appellants' summary offenses were not punishable by more than six months imprisonment. Thus, a majority of the Supreme Court, had it been asked to consider the facts of this case, would have held that appellant Bruce's and appellant Thomas's uncounseled summary offense convictions obtained under the Pennsylvania statute for retail theft could be used under an enhanced penalty statute to convert their subsequent offenses into misdemeanors which carry longer potential prison terms and larger fines.[11]

**10.** The opinions in *Baldasar* do not lend themselves to an application of the "narrowest grounds" test first set forth in *Gregg v. Georgia,* 428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 2923 n. 15, 49 L.Ed.2d 859 (1976) (plurality opinion) and adopted by a majority of the Court in *Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977): "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds....'" The Supreme Court has never explained what constitutes "narrow grounds," and it is not apparent from a reading of the opinions in *Baldasar* that any of them is narrower than the others. Our analysis is based simply on a fair reading of each of the concurring and dissenting opinions. *See* Rudstein, The Collateral Use of Uncounseled Misdemeanor Convictions after *Scott* and *Baldasar,* 34 U.Fla.L.Rev. 517 (1982); Note, The Precedential Value of Supreme Court Plurality Decisions, 80 Colum.L.Rev. 756 (1980).

**11.** It follows that any defendant who has a valid first conviction under Pennsylvania's retail theft statute may have that conviction used against him as the basis for enhancing the degree of a subsequent instance of retail theft and for enhancing the severity of the sentence for such subsequent crimes. Since Pa.R.Crim.P. 316 provides that

■ We hold, therefore, that since appellants' first convictions were validly entered pursuant to the Sixth and Fourteenth Amendments to the United States Constitution, Article I, Section 9 of the Pennsylvania Constitution, the Pennsylvania retail theft statute, and the Pennsylvania Rules of Criminal Procedure, the validity of those convictions was not impugned when appellants were charged with misdemeanors, rather than summary offenses, for their second offenses of retail theft, and were sentenced upon conviction of those misdemeanors. Appellants' subsequent criminal conduct did not create a right to counsel, where none otherwise existed, for their summary offenses of retail theft.

■ We do not think that the interests of justice dictate a different result. Pa.R.Crim.P. 316(c)(i) grants trial courts discretion to appoint counsel on a case-by-case basis "whenever the interests of justice require it." *See* Comment, Pa.R.Crim.P. 316. However, the interests of justice do not require the adoption of a rule extending a defendant's right to counsel beyond the rights already granted by the United States and Pennsylvania Constitutions simply because the defendant has been charged with a summary offense, conviction of which may be used to enhance the grading and sentencing of a subsequent crime. The Commonwealth has an important interest in attempting to discourage repeat offenses of retail theft. The scheme adopted by the legislature ably supports this interest, and to hold that appellants should have been provided with counsel at the summary conviction stage of the proceedings would frustrate the purposes of this scheme. *See* 18 Pa.C.S.A. § 3929(b)(1). The legislature, realizing that retail theft is a not uncommon event, chose to treat the first offense in a mild and

only defendants charged with summary offenses—which by definition allow a maximum sentence of ninety days imprisonment—for whom a sentence of imprisonment is unlikely have no right to counsel, any conviction which was obtained in compliance with Rule 316 will satisfy both the *Argersinger/Scott* test and Justice Blackmun's test of validity under the Sixth and Fourteenth Amendments to the United States Constitution, as well as the requirements of Article I, Section 9 of the Pennsylvania Constitution.

expeditious manner. The Commonwealth benefits in that prosecution for a first offense does not require a great expenditure of judicial manpower, and the defendant benefits in that the sentence is very lenient. The legislature could have made a first offense of retail theft a misdemeanor, but instead chose to wait until a second offense occurred before grading the offense a misdemeanor and bringing greater judicial resources and the possibility of a more serious sentence into play. A repeat offender is not deprived of any rights simply because at some earlier time in his or her life, he or she was dealt with in a lenient manner.

Appellants also contend that a conviction based upon a guilty plea entered by an uncounseled juvenile may not be used to upgrade the degree of a subsequent conviction. Appellants argue that allowing juvenile convictions to be used to enhance grading and sentencing for subsequent crimes violates the rehabilitative purposes of the Juvenile Act; that if they had been eligible for consideration under the Juvenile Act when they were charged with their first offenses, they would have been entitled to the appointment of counsel, would have qualified for the special dispositions provided for in the Juvenile Act, and would have sustained adjudications of delinquency rather than convictions which could subsequently be used against them; and that an illogical result occurs in the case of retail theft by a juvenile because a juvenile who steals items valued at more than $150 is eligible for consideration under the Juvenile Act and will sustain only an adjudication of delinquency which will not have any effect upon grading or punishment for a subsequent crime, while a juvenile who steals items of lesser value will not be eligible for consideration under the Juvenile Act and will sustain a criminal conviction for the summary offense of retail theft, which will then be used to enhance grading and sentencing for a subsequent retail theft offense.[12] These arguments are without merit.

12. If a juvenile steals merchandise valued at over $150, he will be eligible for consideration under the Juvenile Act because his offense would be a misdemeanor of the first degree if it were committed by an adult. *See* 18 Pa.C.S.A. § 3929(b)(1)(iii). However, if a juvenile

The Juvenile Act does not seek to rehabilitate every juvenile who commits an unlawful act; rather, the Act's purpose is to "remove from children committing *delinquent acts* the consequences of criminal behavior, and to substitute therefor a program of supervision, care and rehabilitation." 42 Pa.C.S.A. § 6301(b)(2) (emphasis added). Since appellants' summary offenses were not delinquent acts within the meaning of the Juvenile Act, appellants had no right to the rehabilitative benefits offered under the Act, and the use of appellants' summary offenses to enhance the grading and sentencing of their subsequent crimes does not violate the purposes of the Act.

Further, appellants had no right to receive any particular type of treatment simply because they were juveniles when they committed their first offenses. Inclusion within, or exclusion from, the provisions of the Juvenile Act is a matter within the discretion of the legislature. Here, the legislature has made it very clear that individuals in appellants' positions are not eligible for consideration under the Juvenile Act, first by exempting summary offenses from the definition of "delinquent act" in the Juvenile Act; and second, by making specific provision for individuals sixteen years of age or older, who have been charged with the summary offense of retail theft, in the Crimes Code. *See* 42 Pa.C.S.A. § 6302; 18 Pa.C.S.A. § 3929(g).[13]

■ We hold, therefore, that the fact that appellants were juveniles at the time of their first offenses does not preclude the use of the convictions for those offenses to

steals merchandise valued at less than $150, as occurred in this case, he will not be eligible for consideration under the Juvenile Act because his offense is a summary offense and summary offenses are not delinquent acts within the meaning of the Juvenile Act. *See* 18 Pa.C.S.A. § 3929(b)(1)(i); 42 Pa.C.S.A. § 6302, 6322.

13. The retail theft statute provides:

Prior to the commencement of trial or entry of plea of a defendant 16 years of age or older accused of the summary offense of retail theft, the issuing authority shall order the defendant to submit within five days of such order for fingerprinting....

18 Pa.C.S.A. § 3929(g).

enhance the grading and sentencing for appellants' current convictions.[14]

The order of the Superior Court is affirmed.

FLAHERTY, J., did not participate in the consideration or decision of this case.

ZAPPALA, J., filed a concurring opinion.

NIX, C.J., filed a dissenting opinion.

ZAPPALA, Justice, concurring.

I concur only in the result reached by the majority today. I write separately to express my strong dissatisfaction with the strained reliance the Court unnecessarily places on the United States Supreme Court's plurality decision in *Baldasar v. Illinois*, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980). It is the antithesis of this Commonwealth's great tradition of jurisprudential independence for this Court to ignore our own Constitution and forsake its own powers of reasoning. The majority defers to the admittedly esoteric rationale of the Court in *Baldasar* as though that Court possessed some preternatural power, absent which a rule of law could not be independently fashioned. The majority's interjection of the facts of the case before us into a hypothetical situation with a resultant prognostication of what

**14.** Appellants' citation to cases, in which this Court has held that a "juvenile record" may not be used to impeach a witness, is inapposite. *See, e.g., Commonwealth v. Katchmer,* 453 Pa. 461, 309 A.2d 591 (1973); 42 Pa.C.S.A. § 6354. A "juvenile record" may not be used to impeach a witness because adjudications of delinquency are not criminal convictions, not simply because the individuals who have been so adjudicated were under the age of eighteen at the time they committed their delinquent acts.

In addition, we note that the Juvenile Act itself provides that an adjudication of delinquency may subsequently be used against an individual for certain specified purposes; even if a juvenile is adjudicated delinquent under the Act, he is not entitled to commit subsequent crimes without his delinquent acts being taken into account. See 42 Pa.C.S.A. § 6354(b) ("The disposition of a child under this chapter may not be used against him in any proceeding in any court ... whether before or after reaching majority, except: (1) in dispositional proceedings after conviction of a felony for the purposes of a presentence investigation and report....").

the United States Supreme Court would hold (majority opinion at pp. 60–61) in my estimation rises no higher than an exercise in law school forensics. My dissatisfaction is further exacerbated because it is apparent that the result obtained by the majority today could logically have flowed from an analysis based solely upon the decisional and statutory laws of this Commonwealth.

Whatever the precedential value of a per curiam opinion with appended concurring opinions, I question whether *Baldasar* can even be applied to the facts of the case before us. I think not. The sentence imposed in that case was greater than what could have been imposed for a first offense, hence enhanced. In the instant case neither appellant received a sentence of imprisonment beyond what *could* be imposed upon conviction of a first offense. *Baldasar's* precursors, *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972) and *Scott v. Illinois*, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979), both dealt with the right to counsel when a sentence of imprisonment is imposed. *Argersinger* held that no person could be imprisoned for any offense without the assistance (or knowing waiver) of counsel. *Scott* refined that holding to an "actual imprisonment" test. If no sentence of imprisonment was imposed, an uncounseled conviction could stand. *Baldasar*, on the other hand, dealt with whether an uncounseled misdemeanor conviction, valid because the sentence imposed was a fine and probation, could be collaterally used to enhance what would have been a misdemeanor involving a fine and imprisonment for up to one year, to a felony punishable by fine and imprisonment for up to three years. Baldasar's sentence for the second conviction was imprisonment for one to three years, a sentence beyond the one year imposable for a first offense and therefore enhanced due to the evidence of the prior conviction. The United States Supreme Court, for the various reasons given in the concurring opinions, held that the prior uncounseled conviction could not be used to *enhance* a term of imprisonment. The

operative word in *Baldasar* as well as the instant case is *enhanced.*

Upon the facts before us, it is clear that under Pa.R. Crim.P. 316 no right to counsel existed at the time of the first offenses since there was no likelihood that imprisonment would be imposed, or that it in fact had been imposed. On the subsequent convictions, the cases at bar, Appellant Bruce received a sentence of one year probation, and Appellant Thomas received a seven day prison sentence to be served on the weekend days of his choice. Since the possible sentence for a summary offense involves imprisonment for no more than 90 days, it cannot be said that the sentence in either of these two cases was in fact "enhanced" beyond what was imposable if they had been treated as a first offense.[1] This distinguishes the instant cases from *Baldasar* in that Baldasar's sentence was increased from a maximum of one year to one to three years imprisonment. While it is beyond question that the *grading* of the offense was affected, there is no evidence that the *sentence* has been enhanced. Nowhere is it urged nor can it be said that the Constitution prohibits the different grading of an offense under these circumstances.

From the foregoing it is obvious that the facts of the instant case do not fall within any scenario anticipated by the per curiam opinion in *Baldasar*, or any of its satellite concurrences or dissents. Nor do the facts require us to decide the question of whether the Pennsylvania Constitution mandates the exclusion of prior uncounseled conviction for use in enhancing a subsequent sentence. I therefore concur in the result, but not the reasoning of the majority today.

NIX, Chief Justice, dissenting.

We are here called upon to resolve two questions: a) whether a prior conviction for a summary offense, resulting

---

1. I leave for another day, when the facts are squarely before us, any discussion relative to right to counsel under the Pennsylvania Constitution, or the propriety of using an uncounseled summary conviction, when the subsequent penalty exceeds imprisonment for 90 days.

from an uncounseled guilty plea entered by an adult defendant, may be used to enhance the grading and sentencing of a second conviction for the same offense; and b) whether a prior conviction for a summary offense, resulting from an uncounseled guilty plea entered by a juvenile defendant, may be used to enhance the grading and sentencing of a second conviction for the same offense. The majority has concluded that neither of these situations would be offensive under the Sixth and Fourteenth Amendments to the United States Constitution nor Article I, Section 9 of the Pennsylvania Constitution. I seriously question the majority's conclusions relating to the federal constitutional issues and strongly disagree with their result as it relates to Article I, Section 9 of our Constitution.

It is true that the *per curiam* order entered in *Baldasar v. Illinois*, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980), does not provide precedent for a conclusion that an uncounseled prior conviction may never be used to enhance the sentence for a subsequent offense. However, *Baldasar* does not provide authority that such enhancement will not offend the federal right to counsel. In *Baldasar* four of the members of the Court expressed the view that an uncounseled conviction may not be used to impose an increased term of imprisonment upon a subsequent conviction. *See Baldasar, supra* at 224, 100 S.Ct. at 1586 (Stewart, J., concurring, joined by Brennan & Stevens, JJ.) and *Baldasar, supra* at 225, 100 S.Ct. at 1586 (Marshall, J., concurring, joined by Brennan & Stevens, JJ.). Mr. Justice Blackmun limited his concurrence in the *Baldasar* order to the fact that the original offense was punishable by more than six months.[1] *Baldasar, supra* at 229, 100 S.Ct. at 1589 (Blackmun, J., concurring). That fact does not guar-

---

**1.** Justice Blackmun believed that such a "bright-line" rule would best preserve constitutional values and do so with a measure of clarity for all concerned. *Baldasar v. Illinois*, 446 U.S. 222, 230, 100 S.Ct. 1585, 1589, 64 L.Ed.2d 169 (1980) (Blackmun, J. concurring). Since Petitioner Baldasar was prosecuted for an offense punishable by more than six months' imprisonment, under Justice Blackmun's test Petitioner Baldasar should have been accorded counsel for that prosecution. *Id.*

antee that he would allow enhancement of all subsequent offenses where the original offense did not provide for a sentence of more than six months, particularly where the juvenile status of the defendant at the time of the first uncounseled plea adds a further dimension to the unreliability of the first conviction. While the views expressed in *Baldasar* may provide an argument to overcome the federal constitutional challenges raised here, it is far from certain that the United States Supreme Court, as presently composed, would find that the factual situations here presented would pass federal constitutional muster.

More disturbing is the majority's implicit premise that Article 1, section 9 is merely a reflection of the minimal constitutional guarantees provided under its federal counterpart. It is completely inexplicable to me how the majority can conclude that "any differences that may exist between the right to counsel granted by the Federal Constitution and the right to counsel granted by the Pennsylvania Constitution are not relevant in this case", *see* maj. op. at 59 n. 6, after admitting that this Court has never defined the state constitutional right to counsel with regard to defendants who have been charged with summary offenses.

When the issue of the requirements of the federal and state constitutional right of counsel for an indigent defendant has been considered the question of the severity and nature of the potential sanction has been deemed significant.[2] The consensus that counsel is not required where a sentence of imprisonment will not be imposed is consistent with present perceptions of justice and fairness.[3] The majority of this Court focuses upon the fact that since the defendant did not face the possibility of imprisonment for

2. *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Baldwin v. New York,* 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970); *Duncan v. Louisiana,* 391 U.S. 145, 194, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932).

3. *Scott v. Illinois,* 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979); *Argersinger v. Hamlin, supra.*

the first offense, his uncounseled conviction for the summary offense was constitutionally valid. However, where the issue is whether the original uncounseled conviction may be used to enhance a subsequent offense which *does* expose the defendant to possible imprisonment, the focus must shift to the reliability of the original conviction. *Argersinger v. Hamlin,* 407 U.S. 25, 31–36, 92 S.Ct. 2006, 2009–12, 32 L.Ed.2d 530 (1972).

In a summary proceeding the defendant, without the advice of counsel, is implicitly induced not to resist a finding of guilt because the punishment is slight and the resultant harm to him is de minimis. Where that first offense is subsequently used to enhance a later one, it can no longer be viewed as inconsequential and its reliability should be subject to the strictest scrutiny. The fact that it was originally accepted as valid is not a justification for not scrutinizing its validity where it is used as a basis for enhancing a subsequent sentence. To do so would be inconsistent with the accepted constitutional principle that an indigent defendant is entitled to counsel where he is exposed to a sanction of imprisonment.[4] *Id. Argersinger, supra* at 31–36, 92 S.Ct. at 2009–12.

Thus an analysis which merely distinguishes between the first and second offenses is both unrealistic and inadequate. Regardless of the result reached under the analysis of the United States Supreme Court in *Baldasar, supra,* we must give a full and thorough consideration of the defendant's rights under Article I, section 9 of the Pennsylvania Constitution. Factors which are relevant to the reliability of the first conviction in such summary offense situations include whether the defendant was fully aware of all the conse-

4. The view expressed by the minority in *Baldasar,* which attempts to segregate the second offense and fails to recognize the continuing impact of the first offense, is fallacious on its face. As noted by Mr. Justice Marshall in his concurring opinion in *Baldasar,*

This logic is fallacious for the simple reason that petitioner's prior conviction was not valid for all purposes. Specifically, under the rule of *Scott* and *Argersinger,* it was invalid for the purpose of depriving petitioner of his liberty.

*Baldasar, supra* at 226, 100 S.Ct. at 1587 (Marshall, J., concurring).

quences of the conviction as well as the maturity of making that judgment. These considerations were ignored by the majority in its haste to accept what it perceives to be the minimal guarantees provided for under the Federal Constitution.

I dissent.