# Commonwealth v. Taylor

C.P. of Lawrence County, no. 191 of 2009.

*William J. Flannery*, for Commonwealth.
*Terri Taylor*, pro se.

COX, *J.*, October 29, 2010—In the instant matter, the defendant Terri Taylor is appealing a court order dated June 25, 2010, imposing sentence for a conviction of disorderly conduct, in violation of 18 Pa.C.S.A. § 5503(a)(4), and a court order permitting the withdrawal of the defendant's counsel, Bradley G. Olson, Jr., Esquire, dated October 1, 2010. In her statement of errors complained of on appeal, the defendant asserts the following arguments:

I. there was a violation of the defendant's constitutional rights;

II. the commonwealth failed to present sufficient evidence that the defendant committed the offense of disorderly conduct; and

III. a conviction for the offense of disorderly conduct was against the weight of the evidence.

On January 14, 2009, officer Fred Buswell of the New Castle Police Department was dispatched to 1803 Hamilton Street, New Castle, Lawrence County, Pennsylvania, in response to a domestic disturbance. When Officer Buswell arrived at that location, Officer Stephen Brooks of the New Castle Police Department was already inside of the residence speaking with Antonio Taylor, the husband of the defendant. A physical altercation ensued between

Officer Brooks and Mr. Taylor, which prompted Officer Buswell to exit his vehicle and run into the residence to assist Officer Brooks. Upon entering the residence, Officer Buswell went directly into the kitchen and used his taser gun on Mr. Taylor to stop the altercation. As those events transpired, the defendant, who is Mr. Taylor's wife, was standing behind Officer Buswell making inflammatory statements towards Mr. Taylor, such as "How do you like that bitch?" and telling Officer Brooks to hit him again[1]. According to Officer Buswell, the defendant's comments created a hazardous situation as she inflamed Mr. Taylor's level of agitation and anger. As a result, it was more difficult for the police officers to calm Mr. Taylor. It must be noted that during the entirety of these events there were several children present in the residence.

Eventually, the police officers were able to subdue Mr. Taylor, place him in handcuffs and exit the residence. However, the defendant also walked onto the front porch of the residence and continued to shout at Mr. Taylor, even though the police officers ordered her to cease her actions. In response, Mr. Taylor began shouting at the defendant and he did not respond to the commands of the police officers because his focus was on the defendant. As they attempted to place Mr. Taylor in the police cruiser, the defendant continued to make disparaging remarks to her husband, which made it more difficult for the police officers to convince Mr. Taylor to comply with them as his focus remained on the defendant and he wanted to

---

1. The defendant apparently wanted Officer Brooks to utilize his taser gun on Mr. Taylor, but the police officers refrained from using their taser guns for a second time.

continue arguing with her. It must be noted that these events occurred in a residential neighborhood. Finally, the police officers were able to place Mr. Taylor into the police cruiser and transported him to the New Castle Police Station. Officer Buswell then turned his attention to the defendant and informed her that she was going to be charged with disorderly conduct because she continued to shout at Mr. Taylor after being asked repeatedly to stop.

The defendant was charged with disorderly conduct, and immediately prior to trial, the commonwealth reduced the charge from a misdemeanor to a summary offense. This court held a bench trial on November 20, 2009; however, the defendant was granted a continuance after the commonwealth completed its case to obtain witnesses. The court scheduled the trial to resume on January 29, 2010, but the defendant requested another continuance, which the court granted and rescheduled the trial for March 1, 2010. Again, the defendant filed a continuance because the defendant was enrolled in a college course and could not miss class without a penalty. The trial was rescheduled and completed on June 2, 2010. By agreement of counsel, the court took the matter under consideration and, on June 10, 2010, the court convicted the defendant on the charge of disorderly conduct in violation of 18 Pa.C.S.A. § 5503(a)(4). On June 25, 2010, this court sentenced the defendant to a term of non-reporting probation for a period of 90 days under the supervision of the Adult Probation Office of Lawrence County. The defendant subsequently asserted a claim for ineffective assistance of counsel against Larry J. Keith, Esquire, of the Lawrence County Public Defender's Office, so the Honorable President

Judge Dominick Motto appointed Bradley G. Olson, Jr., Esquire, as counsel for the defendant on June 30, 2010. The defendant subsequently filed a petition for leave to appeal nunc oro tunc, which was granted by this court on August 25, 2010. Additionally, the defendant filed a pro se notice of appeal on September 9, 2010. Mr. Olson then filed a petition to withdraw as counsel of record and the court held a hearing on that matter on October 1, 2010. The court permitted Mr. Olson to withdraw as counsel for the defendant and ruled that the defendant was not entitled to court-appointed counsel under Pa.R.Crim.P. 122. Now, the defendant has appealed the court's decision to permit Mr. Olson to withdraw. Moreover, the defendant claims that the commonwealth failed to present sufficient evidence to establish the charge of disorderly conduct and the verdict rendered by the court was against the weight of the evidence.

First, the court must address whether the defendant was entitled to have counsel pursuant to the Pennsylvania Constitution or the Pennsylvania Rules of Criminal Procedure. The decision as to whether the court will grant or deny a court-appointed trial counsel's petition to withdraw is within the sound discretion of the trial court and should not be disturbed unless there was an abuse of discretion. *Commonwealth v. Tuck,* 339, 469 A.2d 644, 650 (Pa. Super. 1983) (citing *Commonwealth v. Segers,* 460 Pa. 149, 331 A.2d 462 (1975)). A defendant's right to have counsel appointed is set forth in Pa.R.Crim.P. 122, which states: "(A) Counsel shall be appointed: (1) in all summary cases, for all defendants who are without financial resources or who are otherwise unable to employ

counsel when there is a likelihood that imprisonment will be imposed." In the comments following Pa.R.Crim.P. 122, it states that no defendant may be sentenced to imprisonment or probation without being afforded the right to counsel at trial. See also *Alabama v. Shelton*, 535 U.S. 654 (2002); *Scott v. Illinois*, 440 U.S. 367 (1979). Additionally, Pa.R.Crim.P. 454 states, "(A) Immediately prior to trial in a summary case: (2) if, in the event of conviction, there is a reasonable likelihood of a sentence of imprisonment or probation, the defendant shall be advised of the right to counsel..." The trial court is not required to appoint counsel when it is determined before trial that a term of imprisonment for that offense was unlikely and, at sentencing, a term of imprisonment was not imposed. *Commonwealth v. Blackham*, 909 A.2d 315, 318 (Pa. Super. 2006). It has been established that the court is not required to provide court-appointed counsel in summary cases where the criminal defendant is not actually subjected to a term of imprisonment upon conviction. *Commonwealth v. Thomas*, 510 Pa. 106, 110, 507 A.2d 57, 59 (1986) (citing *Scott*, supra.; *Argersinger v. Hamlin*, 407 U.S. 25, 92 S. Ct. 2006, 32 L. Ed. 2d 530 (1972)).

In *Thomas*, the appellants, who were 16 and 17 years old at the time, pleaded guilty to the summary offense of retail theft without the assistance of counsel. Upon being charged for a second retail theft, the appellants argued that the original conviction for retail theft should not be utilized for enhancing the sentence for the second retail theft from a summary offense to a misdemeanor as they

were not represented by counsel when they pleaded guilty, in violation of the Sixth and Fourteenth amendments to the United States Constitution and Article 1, Section 9 of the Pennsylvania Constitution. The *Thomas* court disagreed and stated that the constitutional right to appointed counsel in state proceedings is inapplicable to cases where the defendant is not actually subjected to a term of imprisonment upon conviction. *Id.* Furthermore, the courts are not obligated to appoint counsel for defendants who are sentenced to a term of probation. *Id.*, 510 Pa. at 111, 507 A.2d at 59 fn. 7. Thus, the *Thomas* court held that the appellants' based upon the retail theft convictions were appropriate as the court was not required to appoint counsel in that matter. *Id.*, 510 Pa. at 111, 507 A.2d at 60.

In the case sub judice, the defendant was provided with counsel during the bench trial in this matter. However, the defendant subsequently argued that her trial counsel was ineffective; thus, her trial counsel was forced to withdraw from this matter. President Judge Motto then appointed Bradley G. Olson, Esquire, to represent the defendant. Mr. Olson later filed a petition to withdraw as counsel of record with this court claiming that the defendant was no longer entitled to court-appointed counsel in this matter as she was sentenced to probation. Hence, there was no likelihood that the defendant would be sentenced to a term of imprisonment. This court granted that petition because the defendant was no longer entitled to court-appointed counsel pursuant to Pa.R.Crim.P. 122 because she was sentenced to non-reporting probation. The court's decision in *Thomas* clearly establishes that a defendant who is charged with a summary offense for which it is

unlikely that he or she will be sentenced to a term of incarceration is not entitled to court-appointed counsel. It is important to note that the defendant was provided with counsel for the duration of her trial and she had the right to retain private counsel after the office of the public defender withdrew its appearance if she chose to do so. Therefore, the court complied with Pa.R.Crim.P. 122 and the established case law precedent when it granted Mr. Olson's petition to withdraw as counsel of record and the defendant was not entitled to court-appointed counsel in this matter.

Next, the defendant argues that the commonwealth presented insufficient evidence to establish the charge of disorderly conduct and the guilty verdict rendered by this court was against the weight of the evidence.

A claim challenging the sufficiency of the evidence is a question of law to be decided by the court. *Commonwealth v. Widmer*, 560 Pa. 308, 319, 744 A.2d 745, 751 (2000). Sufficient evidence to sustain a verdict has been presented when the commonwealth establishes that the accused has committed each material element of the crime charged beyond a reasonable doubt. *Id.* (citing *Commonwealth v. Karkaria*, 533 Pa. 412, 625 A.2d 1167 (1993)). In deciding a post-sentence motion challenging the sufficiency of the evidence, the court must evaluate the entire record and read all of the evidence in a light most favorable to the commonwealth and it is entitled to all reasonable inferences arising therefrom. *Commonwealth v. Johnson*, 631 A.2d 639, 642 (Pa. Super. 1993) (quoting *Commonwealth v. Meadows*, 471 Pa. 201, 369 A.2d

1266 (1977)). "The effect of such a motion is to admit all the facts which the commonwealth's evidence tends to prove." *Id.*, 631 A.2d at 642. A mere conflict in the evidence does not render the evidence insufficient as the fact finder must determine the weight to be given to the testimony and may believe all, part or none of the evidence. *Commonwealth v. Walter*, 849 A.2d 265, 267 (Pa. Super. 2004) (citing *Commonwealth v. Verdekal*, 351 Pa. Super. 412, 506 A.2d 415 (1986); *Commonwealth v. Whitfield*, 475 Pa. 297, 380 A.2d 362 (1977)). The court is not to determine the weight or the credibility to assign to the testimony of record. *Commonwealth v. Kinney*, 863 A.2d 581, 584 (Pa. Super. 2004). Before granting a post-sentence motion based on the sufficiency of the evidence, the court "must find the evidence supporting the verdict to be so weak and inconclusive that a jury of reasonable persons would not have been satisfied as to the accused's guily." *Commonwealth v. Bigelow*, 611 A.2d 301, 303 (Pa. Super. 1992) (citing *Commonwealth v. Blevins*, 453 Pa. 481, 487, 309 A.2d 421, 425 (1973)).

Conversely, a motion for new trial on the ground that the verdict was contrary to the weight of the evidence concedes that the commonwealth presented sufficient evidence to sustain the verdict. *Widmer*, supra. (citing *Commonwealth v. Whiteman*, 485 A.2d 459 (Pa. Super. 1984)). The difference between a determination of the weight of the evidence and the sufficiency of the evidence is that the court is not confined to viewing the record in the light most favorable to the commonwealth in a weight of the evidence determination and the court may assess the credibility of the prosecution's case. *Commonwealth*

362

v. *Vogel*, 501 Pa. 314, 323, 461 A.2d 604, 609 (1983) (citations omitted).

Disorderly conduct is defined as:

(a) Offense defined.—A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

(1) engages in fighting or threatening, or in violent or tumultuous behavior;

(2) makes unreasonable noise;

(3) uses obscene language, or makes an obscene gesture; or

(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor. 18 Pa.C.S.A. § 5503(a).

The main inquiry when determining if the defendant's conduct rises to the level of disorderly conduct is whether the defendant's words or acts cause or unjustifiably risk a public disturbance. *Commonwealth v. Fedorek*, 596 Pa. 475, 487, 946 A.2d 93,100 (2008) (citing *Commonwealth v. Hock*, 556 Pa. 409, 415-416, 728 A.2d 943, 946 (1999)). Disorderly conduct is not a catchall for every act that is annoying or disturbing to people, the statute contains a *mens rea* element "that may be met by a showing of a reckless disregard of the risk of public inconvenience; annoyance, or alarm, even if the appellant's intent was to send a message to a certain individual, rather than

to cause public inconvenience, annoyance, or alarm." *Commonwealth v. Maerz*, 879 A.2d 1267, 1269 (Pa. Super. 2005) (quoting *Commonwealth v. Kidd*, 442 A.2d 826 (Pa. Super. 1982)). A defendant who exhibits disorderly behavior in a public place has committed disorderly conduct, even if the behavior is directed at a single individual. *Commonwealth v. Young*, 535 A.2d 1141, 1143 (Pa. Super. 1988) (citing *Commonwealth v. Mastrangelo*, 489 Pa. 254, 414 A.2d 54 (1980)). "The cardinal feature of the crime of disorderly conduct is public unruliness which can or does lead to tumult and disorder." *Fedorek*, supra. (citing *Hock*, supra.).

In *Commonwealth v. Roth*, 531 A.2d 1133 (Pa. Super. 1987), an organization called the Denomination Ministry Strategy (hereinafter "DMS") and the network to save the mon valley (hereinafter "the Network"), which included the appellants D. Douglas Roth, Darrell Becker and David Soul, began organizing a protest outside of a church that called for individuals to bring scrap iron that would be placed on the church's property on Easter Sunday. One of the fliers for the protest warned "don't make us evict the police on Easter Sunday, it could get messy!" The elders of the church met with members of the network in an attempt to stop the protest from occurring and DMS and the network responded by requesting time to address the congregation on Easter Sunday. However, the church elders did not agree to permit the Network to speak during Easter Sunday church service. On Easter Sunday, police were stationed outside of the church and were informed that a group of 20 to 30 members of DMS and the network were approaching the church. The members of DMS

and the network marched up to the entry walkway of the church and were met by the church's representative, who informed them that they were not welcome at the church. In response, appellant Roth informed the church representative that they were going to enter the church and place scrap metal on the altar. Upon hearing this, the church representative stepped aside and permitted the police officers to deal with the situation. The groups still refused to leave and appellant Roth urged, "Let's go in." The members of DMS and the Network took steps onto the church walkway and police officers began placing members of those groups under arrest. Members of DMS and the network, including the appellants, were convicted of disorderly conduct and failure of disorderly persons to disperse upon official order. The appellants later argued that the evidence was insufficient to support the charge of disorderly conduct.

The *Roth* court explained that the appellants' disorderly conduct was apparent from the record as their actions caused public inconvenience, annoyance or alarm. *Id.*, 531 A.2d at 1136. The appellants argued that their protest was peaceful and placing the scrap iron on the altar was a method for demonstrating their dissatisfaction with the plight of the poor and unemployed in Mon Valley. The court reasoned that the appellants' actions of moving toward the church after repeated warnings that they were not welcome there demonstrated an intent to cause public inconvenience, annoyance, or alarm. *Id.*, 531 A.2d at 1137. The court stated that the accepted definition of hazardous condition involves a danger or risk. *Id.* (citing American Heritage Dictionary; *State v. Clark*, 39 Or. App. 63, 591

P.2d 752 (1979)). The *Roth* court also explained events of that day created an emotionally charged atmosphere and some members of the congregation, who were informed of the demonstration, did not attend church because they were frightened for their safety due to the propaganda on the fliers handed out several days before Easter Sunday. *Id.* Moreover, the court noted that some of the members of the church felt that their church was under siege and were determined not to the "let the battle be fought" inside their church. *Id.*, 531 A.2d at 1137. With those facts in mind, the *Roth* court ruled that the members of DMS and the network created a hazardous condition when they proceeded to disrupt the church services scheduled for Easter Sunday because altercations could have occurred between the demonstrators and the members of the church. *Id.* The court also held that the actions of the appellants did not serve a legitimate purpose, which was defined as "conduct which is lawful and constitutionally protected." *Id.* (citing *Commonwealth v. Duncan*, 363 A.2d 803 (Pa. Super. 1976)). The court stated that placing scrap iron on a church altar as a manner of protest where it was clearly unwelcome was unlawful and was not constitutionally protected. *Id.* Therefore, there was sufficient evidence to establish that the appellants committed the offense of disorderly conduct. *Id.*

In the current matter, Mr. Taylor and Officer Brooks engaged in a physical altercation inside the residence located at 1803 Hamilton Street, New Castle, Pennsylvania, which prompted Officer Buswell to enter the residence and utilize his taser gun to subdue Mr. Taylor. After Mr. Taylor was subdued by the police officers, the defendant

repeatedly mocked Mr. Taylor, which agitated and angered him. It must be noted that the events transpired in a residential neighborhood and in front of the defendant's children. The police officers repeatedly instructed the defendant to stop shouting at Mr. Taylor as they exited the residence, but she did not conform to their instructions. Instead, the defendant continued to agitate and ridicule Mr. Taylor by walking out to the front porch and shouting at him as the police officers attempted to place him into the police cruiser. Officer Buswell testified at trial that the defendant's comments angered and agitated Mr. Taylor, which caused a hazardous situation for the police officers. In *Roth*, the appellants created a dangerous situation by attempting to enter the church to place scrap iron on the church's altar with the knowledge that the members of the church did not want them to do so. The *Roth* court reasoned that appellants' action provoked the members of the church and could have caused a physical altercation among the people present. *Id.* Similarly, the defendant's actions created a dangerous situation between the police officers and Mr. Taylor. It was apparent that Mr. Taylor was agitated by the words being spoken by the defendant, and she continued to exacerbate the situation by repeatedly shouting at Mr. Taylor. Therefore, the commonwealth presented sufficient evidence to establish that the defendant committed disorderly conduct. Additionally, the verdict rendered by this court was not against the weight of the evidence as the commonwealth presented credible evidence to establish that the defendant created a hazardous condition through her conduct.

For the reasons set forth in this opinion, the defendant's

appeal regarding the court orders dated June 25, 2010, and October 1, 2010, should be denied in its entirety.

## ORDER OF COURT

Now, October 29, 2010, an appeal having been filed in the above-captioned case by the defendant, Terri Taylor, the court directs that the attached opinion be filed to satisfy the requirements of Pa.R.A.P. 1925(a).

The clerk of courts of Lawrence County is directed to immediately assemble the record and transmit said record to the Superior Court of Pennsylvania as required by the applicable rules of appellate procedure.

The clerk of courts is directed to serve a copy of this order of court upon counsel of record, William J. Flannery, Esquire and the defendant Terri Taylor, pro se, at her last known address contained in the file.