J-S27014-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARK HOWARD | : | |
| | : | |
| Appellant | : | No. 1715 WDA 2019 |

Appeal from the Judgment of Sentence Entered October 21, 2019
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-SA-0000121-2019

BEFORE:   OLSON, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.:                    **FILED:  November 5, 2021**

Appellant, Mark Howard, appeals from the judgment of sentence entered on October 21, 2019.  We affirm.

The trial court ably summarized the procedural posture and underlying facts of this appeal.

> On July 9, 2019, Appellant, Mark Howard, was charged with the summary offense of harassment at 18 Pa.C.S.A. § 2709(a)(3). The citation alleged Appellant engaged in a course of conduct which served no legitimate purpose by engaging in repeated verbal altercations with [his] neighbor, June Walton ["Walton"], which required police involvement on numerous occasions.  . . .
>
> On July 31, 2019, [Appellant] was convicted of harassment by Magisterial District Judge Laurie Mikielski and a fine of $300.00 plus $161.25 in costs was imposed. On August 2, 2019, Appellant filed a notice of appeal from the summary conviction.

---

[*] Retired Senior Judge assigned to the Superior Court.

On July 9, 2019, the neighbor, [] Walton was charged at SA-119-2019 with the summary offense of harassment at 18 Pa.C.S.A. § 2709(a)(3) with regard to interactions with Appellant. On July 31, 2019, District Judge Mikielski found Walton guilty, and sentenced her to a fine plus costs. Walton likewise filed a notice of appeal from the summary conviction.

On October 21, 2019, a [trial *de novo*] was held before the [trial court] on the appeals. Both Appellant and Walton appeared and testified. Also, the Commonwealth presented the testimony of Millcreek Township Police Officer Katrina Kuhl, the officer who responded to some, if not all, of the calls to the police by Appellant and Walton. Following the [trial], on October 23, 2019, the [trial] court denied Appellant's summary appeal, found him guilty of harassment at 18 Pa.C.S.A. § 2709(a)(3) and fined him $150.00 plus costs. The [trial] court vacated Walton's summary conviction.

. . .

[The following evidence was presented during Appellant's summary trial.]

Officer Katrina Kuhl

Officer Kuhl's testimony on October 21, 2019 placed in context ongoing problems between Appellant and Walton. Prior to the instant charges, there were approximately five or six incidents involving Appellant, Appellant's wife, and Walton, each involving police response to a call from one or both parties. The incidents involved allegations the parties were yelling at one another and engaging in [] intimidating and annoying behaviors. On each occasion, the police warned the parties to stay away from one another.

The final event which led to the issuing of the citations occurred [on] July 9, 2019. [On that date, Walton called the police because, Walton claimed, Appellant and his wife followed her to an Aldi's grocery store and then] acted in an intimidating manner toward Walton . . . and her children in the parking lot. When [Officer] Kuhl questioned Appellant about the incident, he denied [Walton] to the store and

- 2 -

reported it was Walton who was yelling and [that Walton] filmed his behaviors at the store on her cell phone. Surveillance video depicted Appellant and Walton yelling at each other in the store parking lot. Unable to determine the instigator, if any, [Officer] Kuhl issued a citation to each party for harassment. . . .

[Appellant]

. . . Distilled, [Appellant's] testimony is [] as follows. There was a dispute between Appellant, who was with his wife, and Walton in the parking lot at Aldi's. [Specifically, Appellant testified:

> Me and my wife were sitting in a car in [the Aldi's parking lot] discussing whether or not we're going to have what for a picnic. [Walton] came around two cars around me. . . . She started calling me names and swearing and hollering. So I backed up. I was, like, I don't want to do this. She got around to go towards the store and she started screaming and hollering, and I told my wife I'm not running to hide from somebody who's doing this to me. I've got the right to go in the store and purchase the stuff for my grandchildren for a picnic, so I parked the car, got up, started walking into the store. She started swearing all kinds of stuff at me, and then turned her cell phone on.

N.T. Trial, 10/21/19, at 5.]

. . . [Appellant] met Walton about a year ago after she moved next door. He offered assistance plowing her driveway. Appellant is 57 years of age, married, with two children at home. There are charges pending against Appellant's wife for harassing the therapist of Walton's children. There are three dogs in Appellant's household: on one occasion one [dog] went into Walton's yard. Appellant feels Walton is "playing the system."

June Walton

. . . In sum, Walton testified she moved to her current residence in December [] 2018; . . . she has two children. . . . She met Appellant when he offered to plow her driveway. [Walton testified that, o]n February 14, 2019, after a visit from Appellant's wife, Appellant went to Walton's residence and "pushed himself on me in front of my children. I asked him to leave. He refused." Appellant offered to obtain a divorce from his wife if Walton would have a relationship with him. Walton declined the request. . . .

After this, Walton testified she suffered what she perceived as repercussions, including vandalism to her house, and her children's therapists were harassed. Appellant's dogs entered her property. One dog bit her son. [She testified that] Appellant and his wife constantly engage in threatening and harassing behaviors toward [her] and her children. . . .

With regard to the incident at Aldi's, [Walton testified that] Appellant and his wife overheard Walton tell her daughter that Walton was going to Aldi's. Walton and her daughter walked to Aldi's. When they arrived, Appellant and his wife were sitting in the parking lot, and issued verbal threats to Walton and her child. Walton and her daughter left, went to get a snack and take a walk before returning to the store, in the hope Appellant and his wife would be gone. When Walton and the child returned to the store, Appellant and his wife were in the parking lot, and issued further verbal threats to Walton. Walton's child, in her words, was "terrified." Someone advised Walton to call the police. As Walton attempted to leave Aldi's parking lot, Appellant and his wife "swerved their car into us many times in their truck." Walton was in fear, so she called the police from the store or the parking lot. Walton attempted to film the events on her cell phone. Appellant nearly knocked the phone from Walton's hand; he called her a ["bitch"] and got really close to her face.

Walton testified Appellant's unwanted behaviors have severely, adversely impacted her children, who have various disabilities. Due to Appellant's behaviors, the children's caseworkers will no longer pay home visits. Appellant says disparaging things to Walton's children. Walton currently does not possess a vehicle; and Walton and her children hide out in their house to avoid contact with Appellant and his

wife. Walton would like to move to a different residence, but since her children are currently doing well in school, all she requests is that she and her children be left alone[] and that Appellant refrain from following Walton to the store[,] swearing at Walton[,] and swearing and threatening Walton's children. Other than refuting Appellant's Valentine's Day advances, Walton denied speaking with Appellant or engaging in vindictive behaviors with Appellant and his wife.

Trial Court Opinion, 11/3/20, at 1-2 and 6-9 (citations and some capitalization omitted).

The trial court found Appellant guilty of the summary offense of harassment and sentenced him to pay a fine of $150.00 and costs. Appellant filed a timely notice of appeal from his judgment of sentence. He raises two claims on appeal:

[1.] The evidence in this case was not sufficient to prove that [Appellant] committed the crime as charged in that [Appellant] contends that the evidence did not prove that he committed the offense of harassment when the [] victim in this case had threatened him and his family and it was unclear which party had started the incident[.]

[2.] The trial court in this case erred by failing to ensure that [Appellant] was represented by counsel, especially when the court held the summary trials for two individuals at the same time and the other individual was represented by appointed counsel.

Appellant's Brief at 2 (some capitalization omitted).

First, Appellant claims that the evidence was insufficient to support his summary conviction for harassment. We review Appellant's sufficiency of the evidence challenge under the following standard:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is

sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Callen***, 198 A.3d 1149, 1167 (Pa. Super. 2018)

(quotation marks, citations, and corrections omitted).

Appellant was convicted of harassment under 18 Pa.C.S.A. § 2709(a)(3). This section declares:

A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:

. . .

(3) engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose.

18 Pa.C.S.A. § 2709(a)(3).

According to Appellant, the evidence was insufficient to sustain his harassment conviction because:

The evidence was disjointed and showed a pattern of Ms. Walton accusing [Appellant] of various activities, while [Appellant] also accused Ms. Walton of harassing him and his

- 6 -

family to the point that he put a camera system outside of his house to be able to video what was actually going on between the two parties. [Appellant] was convicted on the testimony of the victim, which was clearly very focused on her attempt to defend herself, since she was on trial for charges as well. The charging officer specifically stated that she was unsure of which party actually started the confrontation between the two individuals.

Appellant's Brief at 9-10.

Appellant's claim improperly views the evidence in the light most favorable to him. Viewing the evidence in the light most favorable to the Commonwealth, there was sufficient evidence to support Appellant's harassment conviction. To be sure, Ms. Walton testified that, after she rebuffed Appellant's sexual advances, "vindictive things started happening; my windows started getting broken, calls were just made, therapists started to be harassed . . . I had to call the police multiple times for [Appellant's] dogs." N.T. Trial, 10/21/19, at 24 and 26. Further, Ms. Walton testified that Appellant, Appellant's wife, and Appellant's children "constantly follow and stalk and harass me and my kids everywhere we go." *Id.* at 26.

Regarding the confrontation at Aldi's, Ms. Walton testified that she told her daughter and her daughter's friend that they were all going to Aldi's. Appellant overheard this and, when Ms. Walton and the two children arrived at Aldi's, Appellant and Appellant's wife were "sitting in the parking lot, shouting, screaming, swearing, threaten[ing] to kill us." *Id.* at 27. Ms. Walton testified that she and the children left and went on a 45 minute walk. When they returned to the store, Ms. Walton testified that Appellant and his

wife "were still sitting in the parking lot screaming:  . . . we have somebody in there waiting to kill you and hit you over your head." *Id.*  Ms. Walton testified that her daughter was "terrified." *Id.*  She testified:

> So we tried leaving and they said we're going to run you over on the way home.
>
> They swerved their car into us many times, and their truck. They have had multiple times where they tried to kill us and run us over.
>
> So we did not feel comfortable leaving so I did call the police officer.  . . .
>
> So when he went to walk in the store and I was trying to clear up space on my video to record what they were doing because the police said in order to get stalking you need to have video and just keep documenting everything, so I was trying to clear up space on my phone to video that they were there, that they wouldn't leave and that they were shouting and saying things to me, [Appellant] puffed up his chest, almost knocked my phone out of my hand, and he goes: That's what I thought, bitch, and got really close to my face.
>
> They went in about five minutes, came out, him and his wife. She was screaming that I suck dick in the neighborhood for $20.

*Id.* at 28-29.

Further, Ms. Walton testified that Appellant and his family "do the same stuff that they do to me to [my] kids.  Tell them they're so ugly, you're a Facebook ho like your mother, to my daughter.  Go kill yourself." *Id.* at 29-30.

Viewed in the light most favorable to the Commonwealth, this evidence demonstrates that Appellant has engaged in a long-running course of conduct and has repeatedly committed acts which serve no legitimate purpose, all

done with the intent to harass Ms. Walton. The evidence is thus sufficient to support Appellant's summary conviction for harassment. Appellant's claim to the contrary fails.

Next, Appellant claims that the trial court erred when it "fail[ed] to ensure that [Appellant] was represented by counsel." According to Appellant:

> The trial court did not hold a sufficient colloquy regarding whether [Appellant] was truly waiving his right to counsel or providing [Appellant] with any information regarding whether he understood he was waiving his right and that he would be held to the same standard without counsel as he would have with counsel.

Appellant's Brief at 12.

This claim fails because Appellant did not face a "reasonable likelihood of imprisonment or probation" in this summary case and, thus, Appellant did not have a constitutional right to counsel here.[1] *See* Trial Court Opinion, 11/3/20, at 6 (trial court noted: "this was not a case where there was a 'reasonable likelihood' of a sentence of imprisonment or parole upon conviction"); **Commonwealth v. Thomas**, 507 A.2d 57, 59 (Pa. 1986) (holding that neither the United States nor the Pennsylvania Constitution requires a defendant to "be provided with counsel when he or she was charged with a summary offense [where] there was no likelihood that imprisonment would be imposed"); **Commonwealth v. Smith**, 868 A.2d 1253, 1256 (Pa. Super. 2005) ("there is no right to counsel where the only sentence provided

---

[1] Further, Appellant did not receive a sentence of imprisonment or probation; the trial court sentenced Appellant to a $150.00 fine.

for in a summary violation is a fine and costs") (quotation marks and citations omitted). Moreover, since Appellant did not face a "reasonable likelihood of imprisonment or probation," the trial court was not required to advise Appellant of his right to counsel or to colloquy Appellant regarding the waiver of his right to counsel. **See** Pa.R.Crim.P. 454(A)(2) ("**if, in the event of a conviction, there is a reasonable likelihood of a sentence of imprisonment or probation**, the defendant shall be advised of the right to counsel") (emphasis added). As such, Appellant's claim that the trial court erred in failing to "hold a sufficient colloquy regarding whether [Appellant] was truly waiving his right to counsel" fails.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judge Nichols concurs in the result.

Judge Colins joins.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/5/2021